**YIAKOUMIS v. HALL et al. and three other cases.**

Nos. 112–115.

United States District Court
E. D. Virginia, Newport News Division.

Feb. 25, 1949.

470

J. L. Morewitz, of Newport News, Va., for petitioners.

John P. Harper, Asst. U.S. Atty., of Norfolk, Va., and George R. Humrickhouse, U.S. Atty., of Richmond, Va., for respondents.

BRYAN, District Judge.

In all of these cases the petitioners seek their release through habeas corpus from custody under warrants issued by authority of the District Director for the Immigration and Naturalization Service, at Baltimore. The petitioners were, at the time of the filing of the petitions, confined in the city jail at Newport News, Virginia, the first three under warrants for a hearing to show cause why they should not be deported, and the fourth petitioner, Nicolas Bogiatzis, was held for deportation under a warrant also signed by the District Director.

The petitioners are Greek nationals, and, so far as the record here discloses, are bona fide seamen within the meaning of sec. 3 of the Immigration Act of 1924, 8 U.S.C.A. § 203. The arrest of each of them was on the charge that he had violated sec. 14 of the Act, 8 U.S.C.A. § 214, in that, after entering the United States as an alien seaman, he remained for a longer time than was permitted under the authorized regulations, 8 C.F.R. 120.21, that is, beyond "the time the vessel on which the alien arrives remains in the United States and in no event to exceed 29 days".

Yiakoumis and Gafos entered the United States at Newport News, Virginia, on January 2, 1949, as members of the crew of the S.S. Psara, and remained ashore after she sailed from Newport News for a foreign port on January 5, 1949. They were arrested on that day.

Xagoraris last entered the United States at Newport News, Virginia, on November 5, 1948, as a member of the crew of the S.S. Liberator, and remained ashore after she sailed from Newport News for a foreign port on January 5, 1949. He was arrested the same day.

Bogiatzis last entered the United States at Houston, Texas, on December 24, 1948, as a member of the crew of the S.S. Demosthenes, and remained ashore after she left the United States for a foreign port on December 25, 1948. He was arrested in Newport News, Virginia, on a warrant issued January 3, 1949.

In substance the contentions of all of the petitioners are (1) that as they were bona fide merchant seamen, on temporary shore-leave, ready, able and willing to reship foreign, their arrest previous to the expiration of 29 days, was arbitrary and capricious, (2) that their arrest is contrary to the provisions of the 1929 Convention for the Safety of Life at Sea, 50 Stat. 1121, denying the authority of anyone to hold a seaman on board a vessel against his will in a safe harbor, when the seaman has been officially admitted thereto as a member of the crew of a vessel, or to compel the seaman to go to sea against his will, and (3) that the Administrative Procedure Act, June 11, 1946, c. 324, § 1 et seq., 60 Stat. 237, as amended, 5 U.S.C.A. § 1001 et seq., governs deportation proceedings by the Attorney General under the Immigration Act, 8 U.S.C.A. § 155, and that the conduct of the present proceedings have not been, and will not be, in accordance with the Act.

The first three petitions should be considered separately from the Bogiatzis petition.

Yiakoumis, Gafos and Xagoraris

■ It is to be observed that the warrants of arrest of these three seamen are

for hearings upon the issue of whether they should be deported for overstaying their time in the United States. The warrants are but the commencement of the administrative proceedings. Every ground asserted in their petitions for release on habeas corpus may be offered as a defense in the deportation hearings before the officers of the Immigration Service. There is no basis for the assumption that these petitioners will not be given a full, fair and impartial hearing. Nor is there reason to presuppose that the administrative hearing will not follow the requirements of law. Therefore, their application for discharge on habeas corpus is premature, and for this reason the petitions of Yiakoumis, Gafos and Xagoraris will be denied and dismissed.

### Bogiatzis

With respect to the petition of Nicolas Bogiatzis the stage of his deportation case entitles him to a determination now of the grounds averred for his release. To repeat, he entered the United States at Houston, Texas, on December 24, 1948, as a member of the crew of the Demosthenes, sailing under the Panamanian flag, and as a seaman he was permitted to land temporarily. Although his vessel sailed foreign on December 25, he remained ashore and was arrested on January 3, at Newport News. A hearing on the warrant of arrest was immediately had before the Inspector at Newport News. This officer, after according the petitioner a right to counsel, conducted a full hearing and announced his findings of fact and conclusions of law, as well as a proposed order recommending the petitioner's deportation to Greece, in the presence of the petitioner and in accordance with the regulations of the Immigration Service. Although advised of his right to take exceptions to the order of the presiding Inspector for its subsequent review, the petitioner elected not to do so. The District Director on review of the record, affirmed the Inspector's findings, conclusions and order, and issued the deportation warrant in question.

Having remained ashore after his vessel had sailed foreign, clearly the petitioner then became subject to arrest for violation of the regulations and statute already cited. Although it may have been customary for the Immigration Service not to take an alien seaman into custody before the expiration of the 29 days mentioned in the regulation, 8 C.F.R. 120.21, the Court cannot say, even if it has the power to review such action, that the Immigration Service has acted arbitrarily or capriciously in not extending the petitioner further time. The regulations stipulate that the violation commences when the vessel sailed. They are of long standing, equal and uniform in their application. Departure from the customary practice in this instance is not in itself evidence of caprice or arbitrariness. But if we look for a reason for the breach of custom, it is found disclosed in the hearing before the presiding Inspector—the petitioner had just previously overstayed his time while at Norfolk and a warrant for his arrest had been issued on November 9, 1948. In short, this was his second violation of the statute and regulations within a period of 3 months.

Furthermore, the Court is of the opinion that the 1929 Convention, pleaded in the petition, has no pertinency here. It relates to the refusal of shore leave and the impressment of a seaman into the service of a ship. The petitioner has not been denied the right to leave the ship, and he has not been compelled to go to sea. Of course, his present arrest would not have occurred if he had sailed, but the circumstances do not make his arrest equivalent to an involuntary sailing proscribed by the Convention.

The serious point in the Bogiatzis case is the averment that the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., governs the conduct of deportation proceedings by the Attorney General under the Immigration Act of 1917, as amended. 8 U.S.C.A. § 155. The point was not made in the petition but was asserted for the first time at the hearing before the Court. Admittedly, the proceedings resulting in the warrant of deportation of Bogiatzis did not comply with the process of adjudication outlined by the Administrative Procedure Act.

After a consideration of its purposes and scope, the Court is of the opinion that the Administrative Procedure Act does

not control deportation proceedings by the Attorney General. This is so because the Administrative Procedure Act both expressly and impliedly excludes matters of this nature from its application.

When the "foreign affairs functions" of the United States are involved in any legislation (rule making) or adjudication by an administrative agency the Act is inapplicable. Sections 4, 5; 5 U.S.C.A. §§ 1003, 1004. Undoubtedly immigration, dealing with the admission and expulsion of aliens, is an exercise of a sovereign power in international relations. Fong Yue Ting v. United States, 149 U.S. 698, 713, and discussion commencing at 705, 13 S.Ct. 1016, 1022, at page 1018, 37 L.Ed. 905. It is a power belonging to the political branches of our Government, the executive and legislative. Historically they only have occupied this field of government. The courts have studiously refrained from incursion into that realm. Even without the express exclusions in the Act, it is doubtful that the courts would construe the Administrative Procedure Act as empowering them to review the decisions of an executive officer in the performance of foreign affairs functions of government.

 That the courts have in habeas corpus passed upon deportation proceedings does not weaken this view. In every such instance the writ has gone no further than to ascertain whether a person in custody is held under authority of law, Nishimura Ekiu v. United States, 142 U.S. 651, 660, 12 S.Ct. 336, 35 L.Ed. 1146, and to determine whether or not the deportation order was reached through procedures affording due process of law. Vajtauer v. Commissioner, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560. It is a review of the constitutionality of the custody and expulsion. As we shall see, the review contemplated by the Administrative Procedure Act is not so straitened.

 Under this Act the court in its review shall "hold unlawful and set aside" an order "unsupported by substantial evidence". Section 10(e), 5 U.S.C.A. § 1009 (e). In habeas corpus the court in reviewing a deportation proceeding must sustain it if there is "any" or "some" evidence in support. Vajtauer v. Commissioner, supra; Tisi v. Tod, 264 U.S. 131, 44 S.Ct.

260, 68 L.Ed. 590; see Justice Douglas' dissenting opinion Ludecke v. Watkins, 335 U.S. 160, 185, 68 S.Ct. 1429.

We think that this expansion in the breadth of review argues denial of applicability of the Act to deportation proceedings, rather than an intent on the part of the Act to enlarge the review in deportation. But see contra United States v. Watkins, D.C., 73 F.Supp. 216, 219, reversed on other grounds 2 Cir., 164 F.2d 457 without mention of the instant point. Had Congress intended so extensive a participation of the judiciary in a political matter, it would have manifested that intention by a clear and direct investiture of the courts with such additional jurisdiction, assuming it could constitutionally have done so.

United States v. Carusi, 3 Cir., 166 F.2d 457, is not necessarily in conflict with our conclusion. There the Court held that when the deportation proceeding had reached a final stage, although not the ultimate step possible under the administrative proceeding, the deportee could seek a review by petition under the Administrative Procedure Act, without awaiting an arrest and resort to habeas corpus. A petition was permitted by the Court under sec. 10(b), 5 U.S.C.A. § 1009(b). It may be, although it is not our problem here, that section 10 should be construed to authorize a review of a final determination even in those administrative proceedings in which the adjudication is not governed by the Act, sections 5, 7 and 8, 5 U.S.C.A. §§ 1004, 1006, 1007,—that deportation, one of such proceedings, can be reviewed, on petition, within the same scope allowed habeas corpus, as a case not "subject to the requirements of sections 7 and 8" as mentioned in section 10(e). 5 U.S.C.A. §§ 1004, 1006, 1007, 1009(e). However, this would not sustain the position of the petitioner here. He charges that the deportation proceeding must be conducted pursuant to sections 5, 7 and 8 of the Act, and United States v. Carusi does not hold that those sections apply to deportation proceedings.

We agree with Wong Yang Sung v. Clark, D.C.D.C., 80 F.Supp. 235, that by sec. 7(a), also, the Administrative Procedure Act is rendered inapplicable to deportation

proceedings, the provision being that "nothing in this chapter shall be deemed to supersede the conduct of specified classes of proceedings in whole or part by or before boards or other officers specially provided for by or designated pursuant to statute." 5 U.S.C.A. § 1006(a). Clearly the Immigration Act requires the hearings in deportation proceedings, as well as other immigration matters, to be conducted by special officers, thus qualifying the procedure for exception under sec. 7(a) of the Administrative Procedure Act. A different conclusion, however, was reached by another judge of that Court in Eisler v. Clark, D.C.D.C., 77 F.Supp. 610.

The Court will deny and dismiss all of the petitions, and this memorandum will be adopted as a statement of the findings of fact and conclusions of law in each of these cases. Counsel are requested to submit appropriate orders embodying the decisions here stated.