## HEIKKILA v. BARBER, DISTRICT DIRECTOR OF THE IMMIGRATION AND NATURALIZATION SERVICE, et al.

No. 426. Argued February 4–5, 1953.—Decided March 16, 1953.

*Joseph Forer* and *Lloyd E. McMurray* argued the cause for appellant. With them on the brief was *Allan Brotsky.*

*Robert W. Ginnane* argued the cause for Barber, appellee. With him on the brief were *Solicitor General Cummings, Assistant Attorney General Murray, Beatrice*

*Rosenberg* and *John R. Wilkins.* *Robert L. Stern,* then Acting Solicitor General, filed a motion to dismiss the appeal and a statement in opposition to appellant's statement of jurisdiction.

MR. JUSTICE CLARK delivered the opinion of the Court.

Heikkila is an alien whose deportation has been ordered by the Attorney General. He began this action against the District Director of the Immigration and Naturalization Service by a complaint seeking a "review of agency action" as well as injunctive and declaratory relief. His main substantive claim is that § 22 of the Internal Security Act of 1950, 64 Stat. 1006, upon which the order was based, and which makes Communist Party membership *per se* ground for deportation, is unconstitutional. A three-judge District Court convened under 28 U. S. C. §§ 2282, 2284, dismissed the complaint without opinion. Together with the constitutional question, this appeal presents two important procedural questions: whether the validity of deportation orders may be tested by some procedure other than habeas corpus and, if so, whether the Commissioner of Immigration and Naturalization is an indispensable party to the action.

It is clear that prior to the Administrative Procedure Act habeas corpus was the only remedy by which deportation orders could be challenged in the courts.[1] The courts have consistently rejected attempts to use injunctions, declaratory judgments and other types of relief for this purpose.[2] Accordingly, in asserting the availability

---

[1] Mr. Chief Justice Stone, dissenting (on other grounds), in *Bridges* v. *Wixon,* 326 U. S. 135, 167 (1945).

[2] *Fafalios* v. *Doak,* 60 App. D. C. 215, 50 F. 2d 640; *Poliszek* v. *Doak,* 61 App. D. C. 64, 57 F. 2d 430; *Kabadian* v. *Doak,* 62 App. D. C. 114, 65 F. 2d 202; *Darabi* v. *Northrup,* 54 F. 2d 70. See also *Impiriale* v. *Perkins,* 62 App. D. C. 279, 66 F. 2d 805; *Azzollini* v. *Watkins,* 172 F. 2d 897.

of judicial review of the type sought here, appellant relies primarily on § 10 of the Administrative Procedure Act,[3] conceding that the question has not yet been decided by this Court. The Government contends that because

---

[3] "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion—

"(a) RIGHT OF REVIEW.—Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.

"(b) FORM AND VENUE OF ACTION.—The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law.

"(c) REVIEWABLE ACTS.—Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action. . . .

. . . . .

"(e) SCOPE OF REVIEW.—So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 7 and 8 or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the

§ 19 (a) of the Immigration Act of 1917 [4] makes the decision of the Attorney General "final" the underlying statute precludes judicial review and comes within the first exception to § 10.

Apart from the words quoted, the Administrative Procedure Act itself is silent on which "statutes preclude judicial review." Both the Senate and the House Committee Reports on the Act commented that "Very rarely do statutes withhold judicial review." [5] And the House Report added that "To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review." [6] The spirit of these statements together with the broadly remedial purposes of the Act counsel a judicial attitude of hospitality towards the claim that § 10 greatly expanded the availability of judicial review. However, such generalities are not dispositive of the issue here, else a balance would have to be struck between those in the Committee reports and material in the debates which indicates inconsistent legislative understandings as to how exten-

---

facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error." 60 Stat. 243, 5 U. S. C. § 1009.

[4] "In every case where any person is ordered deported from the United States under the provisions of this Act, or of any law or treaty, the decision of the Attorney General shall be final." 39 Stat. 889, as amended, 54 Stat. 1238, 8 U. S. C. § 155 (a). We do not consider the 1952 Act, 66 Stat. 163, which took effect after Heikkila's complaint was filed.

[5] Legislative History, S. Doc. No. 248, 79th Cong., 2d Sess., 212, 275.

[6] Legislative History, 275.

sively § 10 changed the prior law on judicial review.[7] No easy answer is found in our decisions on the subject. Each statute in question must be examined individually; its purpose and history as well as its text are to be considered in deciding whether the courts were intended to provide relief for those aggrieved by administrative action. Mere failure to provide for judicial intervention is not conclusive; neither is the presence of language which appears to bar it.[8]

That the Attorney General's decisions are "final" does not settle the question. The appellant properly emphasizes the ambiguity in that term. Read alone, it might refer to the doctrine requiring exhaustion of administrative remedies before judicial process can be invoked. But "final," as used in immigration legislation, has a history, both in the statutes and in the decisions of this Court. It begins with § 8 of the Immigration Act of 1891, 26 Stat. 1085, which provided in part that "All decisions made by the inspection officers or their assistants touching the right of any alien to land, when adverse to such right, shall be final unless appeal be taken to the superintendent of immigration, whose action shall be subject to review by the Secretary of the Treasury." The appellant in *Ekiu* v. *United States,* 142 U. S. 651 (1892) argued that if § 8 was interpreted as making the administrative exclusion decision conclusive, she was deprived of a constitutional right to have the courts on habeas corpus determine the legality of her detention and, incidental thereto, examine the facts on which it was based. Relying on the peculiarly political nature of the legislative power over aliens, the Court was clear on the power

---

[7] Legislative History, 311, 325.

[8] *Ludecke* v. *Watkins,* 335 U. S. 160 (1948); *American Federation of Labor* v. *Labor Board,* 308 U. S. 401 (1940); *Switchmen's Union* v. *National Mediation Board,* 320 U. S. 297 (1943); *Stark* v. *Wickard,* 321 U. S. 288 (1944).

of Congress to entrust the final determination of the facts in such cases to executive officers. Cf. *Harisiades* v. *Shaughnessy,* 342 U. S. 580 (1952). Mr. Justice Gray found that § 8 was "manifestly intended to prevent the question of an alien immigrant's right to land, when once decided adversely by an inspector, acting within the jurisdiction conferred upon him, from being impeached or reviewed, in the courts or otherwise, save only by appeal to the inspector's official superiors, and in accordance with the provisions of the act." 142 U. S., at 663. With changes unimportant here, this finality provision was carried forward in later immigration legislation. See, *e. g.,* § 25 of the 1903 Act, 32 Stat. 1220, and § 25 of the 1907 Act, 34 Stat. 906. During these years, the cases continued to recognize that Congress had intended to make these administrative decisions nonreviewable to the fullest extent possible under the Constitution. *Fong Yue Ting* v. *United States,* 149 U. S. 698 (1893). In *Lem Moon Sing* v. *United States,* 158 U. S. 538 (1895), treating a comparable provision for the enforcement of the Chinese Exclusion Act, Mr. Justice Harlan observed that when Congress made the administrative decision final, "the authority of the courts to review the decision of the executive officers was taken away." *Id.,* at 549. And by 1901, Mr. Chief Justice Fuller was able to describe as "for many years the recognized and declared policy of the country" the congressional decision to place "the final determination of the right of admission in executive officers, without judicial intervention." *Fok Yung Yo* v. *United States,* 185 U. S. 296, 305 (1902). See also *The Japanese Immigrant Case* (*Yamataya* v. *Fisher*), 189 U. S. 86 (1903); *Pearson* v. *Williams,* 202 U. S. 281 (1906); *Zakonaite* v. *Wolf,* 226 U. S. 272 (1912).

Read against this background of a quarter of a century of consistent judicial interpretation, § 19 of the 1917 Immigration Act, 39 Stat. 889, clearly had the effect of pre-

cluding judicial intervention in deportation cases except insofar as it was required by the Constitution.[9] And the decisions have continued to regard this point as settled. *Kessler* v. *Strecker,* 307 U. S. 22, 34 (1939); *Bridges* v. *Wixon,* 326 U. S. 135, 149, 166, 167 (1945); *Estep* v. *United States,* 327 U. S. 114, 122, 123, n. 14 (1946); *Sunal* v. *Large,* 332 U. S. 174, 177, n. 3 (1947). Clearer evidence that for present purposes the Immigration Act of 1917 is a statute precluding judicial review would be hard to imagine. Whatever view be taken as to the breadth of § 10 of the Administrative Procedure Act, the first exception to that section applies to the case before us. The result is that appellant's rights were not enlarged by that Act. Now, as before, he may attack a deportation order only by habeas corpus.[10]

The three Court of Appeals decisions to the contrary have taken the position that habeas corpus itself represented judicial review, albeit of a limited nature. *United States ex rel. Trinler* v. *Carusi,* 166 F. 2d 457; *Kristensen* v. *McGrath,* 86 U. S. App. D. C. 48, 179 F. 2d 796; *Prince* v. *Commissioner,* 185 F. 2d 578. Under this approach, the finality of an administrative decision must be absolute before the first exception to § 10 can apply. Our difficulty with this position begins with the nature of the writ and

---

[9] The Senate Committee said, "The last [finality] provision, while new in this particular location, is not new in the law, the courts having repeatedly held that in the cases of aliens arrested for deportation, as well as in the cases of those excluded at our ports, the decision of the administrative officers is final, and the Supreme Court having in several decisions regarded the case of the alien arrested for deportation as practically a deferred exclusion (The Japanese Immigrant Case, 189 U. S., 86; Pearson *v.* Williams, 202 U. S., 281; etc.)." S. Rep. No. 352, 64th Cong., 1st Sess., Vol. 2, 16.

[10] We need not consider whether the same result follows from the first part of § 10 (b), "The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute . . . ."

ends with the language of § 10. Regardless of whether or not the scope of inquiry on habeas corpus has been expanded,[11] the function of the courts has always been limited to the enforcement of due process requirements. To review those requirements under the Constitution, whatever the intermediate formulation of their constituents, is very different from applying a statutory standard of review, e. g., deciding "on the whole record" whether there is substantial evidence to support administrative findings of fact under § 10 (e). Yet, for all that appears, § 10 (e) might be called into play as well as § 10 (b) if habeas corpus were regarded as judicial review.[12] In short, it is the scope of inquiry on habeas corpus that differentiates use of the writ from judicial review as that term is used in the Administrative Procedure Act. We hold that deportation orders remain immune to direct attack.

Heikkila suggests that *Perkins* v. *Elg,* 307 U. S. 325 (1939) (declaratory and injunctive relief), and *McGrath* v. *Kristensen,* 340 U. S. 162 (1950) (declaratory relief), were deviations from this rule. But neither of those cases involved an outstanding deportation order. Both Elg and Kristensen litigated erroneous determinations of their status, in one case citizenship, in the other eligibility for citizenship. Elg's right to a judicial hearing on her claim of citizenship had been recognized as early as 1922 in *Ng Fung Ho* v. *White,* 259 U. S. 276. And Kristensen's ineligibility for naturalization was set up in contesting the Attorney General's refusal to suspend deportation

---

[11] Compare *The Japanese Immigrant Case,* 189 U. S. 86 (1903), with *United States ex rel. Vajtauer* v. *Commissioner,* 273 U. S. 103 (1927), and *Bridges* v. *Wixon,* 326 U. S. 135 (1945).

[12] The lower courts have split on this question and we express no opinion on it now. *Yiakoumis* v. *Hall,* 83 F. Supp. 469; *Lindenau* v. *Watkins,* 73 F. Supp. 216.

proceedings under the special provisions of § 19 (c) of the 1917 Immigration Act, as amended, 8 U. S. C. § 155 (c). Heikkila's status as an alien is not disputed and the relief he wants is against an outstanding deportation order. He has not brought himself within *Elg* or *Kristensen.*

Appellant's Administrative Procedure Act argument is his strongest one. The reasons which take his case out of § 10 apply *a fortiori* to arguments based on the general equity powers of the federal courts and the Declaratory Judgment Act. 28 U. S. C. § 2201. See *Skelly Oil Co.* v. *Phillips Co.,* 339 U. S. 667, 671–672 (1950). Because we decide the judgment below must be affirmed on this procedural ground, we do not reach the other questions briefed and argued by the parties.

The rule which we reaffirm recognizes the legislative power to prescribe applicable procedures for those who would contest deportation orders. Congress may well have thought that habeas corpus, despite its apparent inconvenience to the alien, should be the exclusive remedy in these cases in order to minimize opportunities for repetitious litigation and consequent delays as well as to avoid possible venue difficulties connected with any other type of action.[13] We are advised that the Government has recommended legislation which would permit what Heikkila has tried here. But the choice is not ours.

*Affirmed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BLACK joins, dissenting.

Three Courts of Appeals have decided that under the Administrative Procedure Act an alien against whom a deportation order is outstanding may challenge the validity of that order by asking for a declaratory judg-

---

[13] See *Paolo* v. *Garfinkel,* 200 F. 2d 280.

ment. Since 1946, so they held, he has not been re-
stricted to habeas corpus for the assertion of his rights,
and therefore has not needed to wait till he is arrested for
deportation. The careful opinions of Judge Goodrich for
the Third Circuit in *United States ex rel. Trinler* v. *Carusi,*
166 F. 2d 457, of Judge Bazelon for the District of Colum-
bia Circuit in *Kristensen* v. *McGrath,* 86 U. S. App. D. C.
48, 179 F. 2d 796, and of Judge McAllister for the Sixth
Circuit in *Prince* v. *Commissioner,* 185 F. 2d 578, make it
abundantly clear why the Administrative Procedure Act
should be treated as a far-reaching remedial measure,
affording ready access to courts for those who claim that
the administrative process, once it has come to rest, has
disregarded judicially enforceable rights. The legislative
materials concerning the Administrative Procedure Act—
the reports of Committees and especially the authorita-
tive elucidation of the measure by Chairman McCarran—
impressively support the direction of thought which un-
derlies the decisions of the three Courts of Appeals. It
is appropriate to say that in disagreeing with these deci-
sions, this Court is aware that "the broadly remedial
purposes of the Act counsel a judicial attitude of hos-
pitality towards the claim that § 10 greatly expanded the
availability of judicial review." The Court is inhibited
from yielding to this "attitude of hospitality" because the
only way in which a deportation order may be challenged
under the existing Immigration Act is habeas corpus,
and because the scope of inquiry on habeas corpus is
what it is. The Court concludes that this limited scope
of inquiry brings the Immigration Act within the excep-
tion to the provision authorizing an "action for a declara-
tory judgment" under § 10 (b), in that the Immigration
Act is one of the statutes that "preclude judicial review."
60 Stat. 243, 5 U. S. C. § 1009. In short, the Court
gives the phrase "judicial review" in § 10 a technical

content and thereby disregards the vital fact that although § 19 of the Immigration Act of 1917, 39 Stat. 874, 889, as amended in 1940, 54 Stat. 1238, 670, 671, makes the decisions of the Attorney General "final," they are not finally final. As the hundreds of cases in the lower courts demonstrate, the Attorney General's actions are voluminously challenged and frequently set aside. No doubt the respect accorded to his findings is much more extensive than that accorded to findings of other agencies, or, to put it technically, "the scope of inquiry" is more limited. But the decisive fact is that the findings of the Attorney General are subject to challenge in the courts and from time to time are upset, whatever the formulas may be by which what he has finally done is undone.

If anything is plain in the legislative history of the Administrative Procedure Act it is that the Congress was not concerned with formularies when it referred to statutes which "preclude judicial review." Senator McCarran was closely questioned about this matter and he had to satisfy Senators as to the very restricted meaning of this exception. He was not talking about "review" in any technical sense. He was talking about the opportunity to go into court and question what an administrative body had done. And he referred to those rare cases when "a statute denies resort to the court." The bill, he said, "would not set aside such statute." And then he repeated in a paraphrase what he had meant—a denial of "resort to the court"—in loose lawyers' language: "If a statute denies the right of review, the bill does not interfere with the statute." S. Doc. No. 248, 79th Cong., 2d Sess. 319. He had already made clear what his statement, "the bill does not interfere with the statute," meant by pointing out that the exception to ready access to the courts was limited to a "law enacted by statute by the Congress of the United States, grant-

ing a review or denying a review . . . . We were not setting ourselves up to abrogate acts of Congress." *Id.*, at 311.

To allow a proceeding for a declaratory judgment to test the same issues that are open on habeas corpus is to abrogate no Act of Congress. It is, rather, to adopt, as between two permissible constructions of the Administrative Procedure Act, the one that evinces "a judicial attitude of hospitality." The Court shrinks from such a construction, with obvious reluctance, because it thinks it cannot adopt it without subjecting an order of deportation to new and unlimited judicial scrutiny. Surely this is a needless fear. A declaratory judgment action under § 10 (b) can be limited—as it should be—to the scope of review appropriate to the extraordinary remedy of habeas corpus. The Administrative Procedure Act is not to be construed, and it is easy not to construe it, so as to modify the Immigration Act and to allow courts to examine what the Attorney General has done beyond those substantive limits to which habeas corpus is now confined. But it is equally easy, and therefore I believe compelling, to construe the Administrative Procedure Act so as to loosen up the means by which the scrutiny provided for by the Immigration Act may be undertaken, to the extent that the technical conditions for habeas corpus, namely that a person must be in physical custody, can be dispensed with where a claim, capable of being vindicated through habeas corpus, is found.

The point is legally narrow but practically important. It means that one against whom a deportation order is outstanding but not executed may at once move, by means of a declaratory judgment, to challenge the administrative process insofar as the substantive law pertaining to deportation permits challenge. Of course Congress may now explicitly afford this relief. It may

do so without opening the sluices of "review" in deportation cases. But it has already enabled us to do so under the Administrative Procedure Act. I think the Act is sufficiently supple not to require further legislation. The three opinions in the Courts of Appeals, to which reference has already been made, elaborate the grounds on which I would sustain the jurisdiction of the District Court.