**Alfredo A. DULDULAO,**
**Petitioner/Plaintiff,**

v.

**Janet RENO, Attorney General; Doris Meissner, Commissioner of the Immigration and Naturalization Service; Immigration and Naturalization Service; and, Donald A. Radcliffe, District Director, Respondents/Defendants.**

**Civil No. 97–00163 DAE.**

United States District Court,
D. Hawai'i.

March 18, 1997.

Ronald T. Oldenburg, William F. Thompson, III, Lynch & Farmer, Honolulu, HI, Laura L. Ho, American Civil Liberties Union Foundation, Immigrant Rights Project, San Francisco, CA, Kendall Wong, Law Offices of Kendall Wong, Honolulu, HI, for Plaintiff.

Michael Chun, U.S. Attorneys Office, Honolulu, HI, Mary Reiko Osaka, Special Assistant U.S. Attorney, Honolulu, HI, for Defendants.

## ORDER DENYING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION AND HABEAS CORPUS RELIEF AND DISMISSING COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DAVID ALAN EZRA, District Judge.

The court heard Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction on February 18, 1997. Kendall Wong, Esq., appeared at the hearing on behalf of Petitioner; Special Assistant United States Attorney Mary Reiko Osaka, appeared at the hearing on behalf of Respondents. After reviewing the motion and the supporting and opposing memoranda, the court DENIES Petitioner's Motion for Preliminary Injunction and Habeas Corpus Relief and DISMISSES Complaint for Declaratory and Injunctive Relief.

## BACKGROUND

Alfredo Duldulao ("Petitioner"), a native and citizen of the Philippines, entered the United States on June 15, 1975 lawfully as a permanent resident alien. In 1980, he married a United States citizen, and together they have four children who were all born in the United States. Mrs. Duldulao suffered an aneurysm in 1987 and has been disabled and confined to a wheelchair since then. Petitioner's parents and siblings all live in the United States. Respondent Donald A. Radcliffe ("Radcliffe"), District Director of the Honolulu District of the Immigration and Naturalization Service, has approved Mrs. Duldulao's petition for an immediate relative visa on Petitioner's behalf.

While in the United States, Petitioner served in the National Guard for more than four years. He was discharged under "other than honorable conditions." After his discharge in 1981, he worked as a licensed independent roofing contractor, and supported his family through his business' earnings.

On February 9, 1990, Petitioner was convicted of two counts relating to the unlawful possession of a firearm and one count of assault. He was sentenced to five years in prison. He was released on parole in 1991, was returned to prison for a parole violation in 1993, and was released in 1994. Prior to his conviction, Petitioner was the sole support for his wife and children.

Petitioner was placed in deportation proceedings as an alien who has been convicted of a firearms offense, pursuant to 8 U.S.C. § 1251(a)(2)(C) of the Immigration and Nationality Act ("INA"). On August 19, 1994, Petitioner appeared before an Immigration Judge and conceded deportability as charged; as a form of discretionary relief, however, he applied for adjustment of status

pursuant to INA § 245; 8 U.S.C. § 1255. The Immigration Judge ("IJ") found Petitioner to be statutorily eligible for such relief, but denied the application in the exercise of his discretion.

On February 21, 1995, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision, rendering Petitioner's order of deportation administratively final. Petitioner filed for review in the Ninth Circuit Court of Appeals pursuant to 8 U.S.C. § 1105a(a), § 106(a), INA. On appeal, Petitioner argued that the deportation order was unlawful because the IJ and the BIA (1) applied an erroneous legal standard and (2) admitted hearsay evidence that was fundamentally unfair and prejudicial. While the petition for review was pending in the Ninth Circuit, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted and became immediately effective. Section 440(a) of the AEDPA provides that a "final order of deportation" entered against an alien who is deportable by reason of having committed one of the enumerated criminal offenses, including § 242(a)(2)(C), "shall not be subject to review by any court." In response to the Respondents' motion to dismiss, Petitioner argued that the preclusion of judicial review violates the due process and separation of powers clauses of the Constitution. However, the Court dismissed the petition for review for lack of jurisdiction finding no constitutional violation, and did not reach the merits of Petitioner's claims.

On February 14, 1997, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction in the United States District Court. That same day, Petitioner filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. Later that afternoon, this court granted a temporary restraining order to prevent deportation pending a hearing and further briefing on the Motion for Preliminary Injunction.

On February 17, 1997, the court heard Petitioner's Motion for Preliminary Injunction. The court granted the Government an opportunity to submit a written response to Petitioner's brief, and the Government filed a reply brief on February 21, 1997. Petitioner filed an Application for Permission to File Reply Brief in Excess of 15 pages, and a Reply Brief on February 26, 1997.[1]

Petitioner now seeks review of the deportation order by way of habeas corpus, and moves to enjoin his deportation during the pendency of the habeas proceedings.

## DISCUSSION

Approximately ten months prior to the filing of the instant petitions, on April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996, 8 U.S.C. § 1105, ("ADEPA") was signed into law. Section 401(e) of the ADEPA expressly revoked the clear grant of habeas jurisdiction formerly found at 8 U.S.C. § 1105a(a)(10), effective as of April 24, 1996. See Section 401(f) of the AEDPA. Section 440(a) of the ADEPA added a new provision in place of the deleted one, which reads:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or [the offense of having been convicted of two or more crimes of moral turpitude as defined in 8 U.S.C. § 1251(a)(2)(A)(i) ], *shall not be subject to review by any court.*

8 U.S.C. § 1105A(a)(10) (as amended by § 440(a) of the AEDPA) (emphasis added).

■ Because Petitioner filed his Petition for Writ of Habeas Corpus after the enactment date of the AEDPA, the post-AEDPA version of 8 U.S.C. § 1105a(a)(10) governs this matter. *See Powell v. Jennifer,* 937 F.Supp. 1245, 1251–52 (E.D.Mich.1996). The provision has serious implications here.

---

1. At the hearing, Petitioner requested an opportunity to submit supplemental briefing on the issues in this case. The court specifically denied that request. However, the court granted Petitioner an opportunity to submit a brief in response to the Government's reply brief in accordance with the local rules. Petitioner filed a written request for the court to consider its reply brief in excess of 15 pages in violation of Local Rule 220–5. The request was denied, however, Petitioner was granted the opportunity to resubmit a brief within the 15–page limit and the Government was given an opportunity to respond.

Both an IJ and the BIA have found Petitioner deportable on the basis of the AEDPA enumerated crimes he committed while residing in the United States.

## I. Preliminary Injunction

To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury. *Big Country Foods v. Board of Education*, 868 F.2d 1085, 1087–88 (9th Cir.1989).

Petitioner argues that he will be irreparably harmed if deported while his petition is pending before this court. He claims that he will lose his right to seek U.S. citizenship as a veteran of the National Guard during the Vietnam hostilities. He also fears being separated from his family after deportation to the Philippines. Petitioner's deportation will render him inadmissible, thus barring him from reentering the United States for five years. The court acknowledges that Petitioner's deportation constitutes a serious disruption to the life he has lived in the United States for the past twenty years. However, this harm must be weighed against Petitioner's probable success on the merits of his claim and whether serious questions are raised and the balance of hardships tips strongly in his favor.

The likelihood of Petitioner's success on the merits of this claim depends upon the likelihood of Petitioner's success on his petition for habeas corpus.

## II. Petition for Habeas Corpus

### A. *Post-AEDPA Jurisdiction*

Because the applicable sections of the AEDPA are relatively new, few courts have addressed the issue of whether federal courts continue to have jurisdiction to review "final orders of deportation." Recently in *Mbiya v. INS*, 930 F.Supp. 609 (N.D.Ga.1996), a Georgia district court held that after the AEDPA, 28 U.S.C. § 2241 provides jurisdiction for habeas review of a legal permanent resident alien's final order of deportation. However, the court found that such review was unwarranted because the petitioner was not "in custody" as required under § 2241, and his petition failed to allege injury of constitutional proportions absent facts constituting a fundamental miscarriage of justice. *Id.* at 613.

Another district court has held that while Congress has removed from circuit courts and district courts the jurisdiction to review "final orders of deportation," federal courts have not been completely divested of jurisdiction to conduct habeas corpus review of denial of a stay of deportation. *See Powell v. Jennifer*, 937 F.Supp. 1245 (E.D.Mich.1996) (finding that a stay of deportation does not constitute a "final order of deportation" which could preclude even habeas corpus review). The district court in *Powell*, also adopted the "fundamental miscarriage of justice" standard of post-AEDPA habeas review articulated for the first time in *Mbiya*.

█ Habeas corpus review under § 2241 is justified if an alien subject to an order of deportation based on violation of crimes enumerated by Congress demonstrates some grave constitutional error or a fundamental miscarriage of justice. *Mbiya*, 930 F.Supp. 609, 612 (N.D.Ga.1996). *See also, Yesil v. Reno*, 958 F.Supp. 828 (S.D.N.Y., 1997); *Eltayeb v. Ingham*, 950 F.Supp. 95 (S.D.N.Y. 1997); *Powell*, 937 F.Supp. at 1252–53.[2] The *Mbiya* court found that "the provisions of the AEDPA make clear that Congress desired to expedite the deportation of criminal aliens and to restrict all judicial review of final orders of deportation to the greatest extent possible." *Mbiya*, 930 F.Supp. at 612. In determining the scope of habeas review, the court concluded that in light of the AEDPA

---

**2.** Although the courts are divided as to what constitutes a "fundamental miscarriage of justice," they all agree that the fundamental miscarriage of justice—grave constitutional error standard should apply.

and the function of habeas corpus, review should be limited to those situations in which deportation would result in a fundamental miscarriage of justice. *Id.*

The rationale behind the standard espoused by these courts is persuasive, as it correlates properly with our notions of the distinction between habeas review and direct review. It is well settled that habeas corpus is an extraordinary remedy:

> The extraordinary remedy of habeas corpus requires the court, justice or judge to act 'forthwith' and to 'award the writ or issue an order directing the respondent to show cause why the writ should not be granted unless it appears from the application that the applicant or person detained is not entitled thereto' (28 U.S.C. § 2243), and in the latter circumstance, the writ should be denied.

*Ruby v. United States,* 341 F.2d 585, 586–87 (9th Cir.1965). "One who seeks to invoke the extraordinary, summary and emergency remedy of habeas corpus must be content to have his petition or application treated as just that and not something else." *Id.* at 587.

By contrast, Petitioner relies heavily upon *Heikkila v. Barber,* 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953), for the assertion that historically courts have routinely reviewed deportation orders in habeas corpus proceedings even when immigration statutes barred judicial review to the maximum extent possible. While this is true, habeas corpus has never been a substitute for direct review. In fact, the Supreme Court in *Heikkila* explicitly recognized the distinction between the scope of the inquiry on direct review as opposed to habeas corpus review. The Court stated that habeas corpus has always been limited to enforcement of due process requirements. *Id.* at 234–36, 73 S.Ct. at 606. The *Heikkila* Court analyzed a section of the Immigration Act which made the decision of the Attorney General final in every case where any person is ordered deported under the Act. It explained the difference between direct review of deportation orders and habeas review.

To review those requirements under the Constitution, whatever the intermediate formulation of their constituents, is *very different from applying a statutory standard of review,* e.g., deciding on 'the whole record' whether there is substantial evidence to support administrative findings of fact under § 10(e).... In short, it is *the scope of inquiry on habeas corpus that differentiates use of the writ from judicial review* as that term is used in the Administrative Procedure Act. We hold that deportation orders remain immune to direct attack.

*Id.* at 236, 73 S.Ct. at 606–07 (emphasis added). Thus, the very language of *Heikkila* itself dictates that habeas corpus is not to be used as a replacement for direct review. It is likely for this reason that after a "facial review" of the petition in *Mbiya,* the district court found that "he is challenging the deportation order itself rather than an unconstitutional restriction on his liberty." *Mbiya,* 930 F.Supp. at 613. This court is persuaded that the scope of habeas corpus review has been limited after the passage of the AEDPA, and therefore the "fundamental miscarriage of justice" standard strikes the proper balance between the role of habeas corpus and the Congress' plenary power in immigration matters.

B. *Fundamental Miscarriage of Justice or Grave Constitutional Error Standard*

■ Petitioner claims that even if this standard is utilized, he has properly demonstrated a fundamental miscarriage of justice and grave constitutional error sufficient to justify granting the writ of habeas corpus. Petitioner contends that (1) hearsay evidence was improperly admitted at the hearing, (2) the IJ failed to exercise his discretion, and (3) even if the IJ and BIA exercised their discretion, the denial of relief constitutes a manifest abuse of discretion. The INS contends that Petitioner's arguments amount to a disguised attempt at obtaining direct review.[3] For the reasons explained below, this court agrees.

---

3. The INS argues that "it defies clear Congres-

sional intent, not to mention common sense, to

■ Prior to the passage of the AEDPA, while the court of appeals had jurisdiction over appeals of final orders of deportation, a district court had jurisdiction to review denial for discretionary relief. *Emmanuel v. INS*, 579 F.Supp. 1541, 1544 (D.Virgin Islands 1984) (citing *Sotelo Mondragon v. Ilchert*, 653 F.2d 1254, 1256 (9th Cir.1980)). The district courts reviewed these denials for an abuse of discretion. *Blancada v. Turnage*, 891 F.2d 688, 689–90 (9th Cir.1989). In other words, the courts reviewed orders to determine whether they were "based on reasonable, substantial and probative evidence and was neither arbitrary, capricious nor violative of procedural due process." *Emmanuel*, 579 F.Supp. at 1544. However, this form of review was direct and based upon the entire record as a whole.[4] The cases cited by Petitioner in support of review of his claims relate only to direct review of orders other than final orders of deportation. Thus, whether the writ of habeas corpus is justified depends upon whether from a facial review of the petition it appears that the applicant "is not entitled thereto." *Ruby*, 341 F.2d at 586.[5]

■ Petitioner's first argument is that the IJ admitted "fundamentally unfair hearsay evidence" in the proceedings. Petitioner asks this court to reevaluate the evidence to determine whether the evidence should have been admitted. This determination would essentially require a *de novo* review of the facts and law and would be no different from direct review of the deportation order.[6] In the instant case, the evaluation of whether evidence in a deportation proceeding constitutes hearsay does not amount to a fundamental miscarriage of justice or a grave constitutional error. Petitioner cannot hope to achieve direct review in this proceeding when it has been expressly precluded by the enactment of the AEDPA.

Petitioner also submits that the IJ failed to exercise its discretion by making the granting of relief dependent solely upon one factor. Discretion, in and of itself, involves weighing and balancing the facts and making determinations based upon the law. Such a determination by this court on the IJ's exercise of discretion would require complete review of the record and transcripts to determine what factors the IJ weighed in making its decision. However, it is unclear that even a direct review of Petitioner's case would create a different result. *See Chavez–Ramirez v. INS*, 792 F.2d 932, 934 (9th Cir. 1986) (courts should not reverse decisions of the BIA "based solely on the conclusion that a *de novo* review of the inert record below would lead [them] to an opposite result."). Petitioner asks this court to substitute its judgment for one more seasoned and experienced in immigration and naturalization mat-

---

suggest that Congress in AEDPA sought to deprive Duldulao of his Ninth Circuit review petition, only to allow him to resurface in district court to renew his same attacks on the validity of his deportation order." Respondent's Reply at 4. "Nevertheless, before this Court Duldulao effectively seeks direct review of his deportation order pursuant to 28 U.S.C. § 2241, rather than collateral attack for Constitutional error." *Id.* n. 2.

4. Prior to enactment of AEDPA, courts reviewed BIA determinations *de novo* for errors of law. *Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988). Review of findings of fact was limited to the administrative record, and BIA findings were upheld if supported by "reasonable, substantial and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); *Chavez–Ramirez v. INS*, 792 F.2d 932, 934–35 (9th Cir. 1986). Thus, courts could not reverse decisions of the BIA "based solely on the conclusion that a *de novo* review of the inert record below would lead [them] to an opposite result." *Chavez–Ramirez v. INS*, 792 F.2d 932, 934 (9th Cir.1986).

5. The court notes that Petitioner raises exactly the same arguments regarding error by the IJ which were raised before the Ninth Circuit in his petition for direct review. Relevant is the fact that constitutional violations were not among the arguments Petitioner raised before the Ninth Circuit. Nothing precluded Petitioner from raising constitutional claims in that proceeding. *See Carr v. INS*, 86 F.3d 949, 951 (9th Cir.1996) (claims of due process violations in deportation proceedings are reviewed *de novo*). For the instant habeas corpus review however, Petitioner makes the same arguments but contends that the IJ's errors amount to violations of a constitutional magnitude.

6. Relevant is the fact that Petitioner's claim fails to establish that *any* error was made in light of the fact that hearsay is admissible in deportation proceedings if probative and its use is fundamentally fair. *Hoonsilapa v. INS*, 575 F.2d 735, 738 (9th Cir.1978) (citations omitted).

ters. Once again Petitioner has failed to demonstrate injury of constitutional proportions.

Finally, Petitioner claims that the IJ and BIA committed a manifest abuse of discretion by failing to consider the "outstanding equities" in favor of the Petitioner. It should be noted that the IJ had all of the facts and law before it. Therefore, determining the amount of weight the IJ placed on certain factors would be tantamount to direct review of the IJ's decision to deport Petitioner.[7]

Because Petitioner merely seeks to utilize § 2241 to achieve direct review of his claims, his petition for habeas corpus must fail as it does not identify a fundamental miscarriage of justice or a grave constitutional error.[8] Therefore, Petitioner's Motion for Preliminary Injunction and Habeas Corpus Relief are DENIED.

### CONCLUSION

For the reasons stated above, the court DENIES Petitioner's Motion for Preliminary Injunction and DENIES Petitioner's Writ of Habeas Corpus. The court directs that the Complaint for Declaratory and Injunctive Relief be DISMISSED.

IT IS SO ORDERED.

---

7. Petitioner argues that the Constitution requires the availability of habeas corpus review under 28 U.S.C. § 2241 for *all* claims of agency error, including claims that the BIA abused its discretion, that its factual determinations were not supported by substantial evidence, or that it misconstrued provisions of the statute it is charged with administering. Petitioner's Reply at 7–12. This likewise indicates that Petitioner overlooks the distinction between direct review and habeas corpus review.

8. The Ninth Circuit has already determined that "[s]ince aliens have no constitutional right to [direct] judicial review of deportation orders, section 440(a) does not offend due process." *Duldulao v. INS*, 90 F.3d 396 (9th Cir.1996).