THOMAS, Circuit Judge,
concurring, with whom WARDLAW, Circuit Judge, joins and BERZON, Circuit Judge, joins as to Part I:
I concur in the Per Curiam opinion. I write separately to express my views on jurisdiction and the scope of our habeas review.
I
The district court had jurisdiction over Trinidad y Garcia’s claims pursuant to 28 U.S.C. § 2241 and the Constitution of the United States.
*958 A
The district court had jurisdiction over the action pursuant to 28 U.S.C. § 2241(c)(3), which makes the writ of habeas corpus available to all persons “in custody in violation of the Constitution or laws or treaties of the United States.” Federal habeas relief under § 2241 is available as a remedy to non-citizens challenging executive detention. INS v. St. Cyr, 533 U.S. 289, 301-03, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Section 2241 also provides an avenue of relief to persons, such as Trinidad y Garcia, who are challenging the legality of extradition proceedings. Barapind v. Reno, 225 F.3d 1100, 1110 (9th Cir.2000). Although habeas review may have been historically narrow in the extradition context, see e.g. Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925), the Supreme Court has long recognized that “[tjhere is no executive discretion to surrender [an individual] to a foreign government, unless that discretion is granted by law.” Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 9, 57 S.Ct. 100, 81 L.Ed. 5 (1936). Trinidad claims that his extradition would be illegal under the Foreign Affairs Reform and Restructuring Act of 1998, 8 U.S.C. § 1231 note, and its implementing regulations, 22 C.F.R. §§ 95.2-.3. This claim is cognizable on habeas review.
1
The REAL-ID Act[1] does not repeal the habeas jurisdiction available to Trinidad y Garcia, as the government contends.[2] The jurisdiction-stripping provisions of the REAL-ID Act removed federal habeas jurisdiction over final orders of removal, in favor of direct petitions for review. Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir.2006). But the REAL-ID Act’s jurisdiction-stripping provisions do not remove federal habeas jurisdiction over petitions that do not directly challenge a final order of removal. Id. at 1075-76; see also Flores-Torres v. Mukasey, 548 F.3d 708, 711(9th Cir.2008); Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942, 946 (9th Cir.2008).
The purpose of the REAL-ID Act’s jurisdiction-stripping provisions was to “consolidate judicial review of immigration proceedings into one action in the court of appeals.” St. Cyr, 533 U.S. at 313, 121 S.Ct. 2271 (internal quotation marks omitted) (discussing a related section). Indeed, “the entire section is focused on orders of removal.” Singh v. Gonzales, 499 F.3d 969, 977 (2007). Uncodified sections of the REAL ID Act state that the legislation was intended to apply only to “final administrative order[s] of removal, deportation, or exclusion.” 119 Stat. 231, 311 (quoted in notes to 8 U.S.C. § 1252). Simply put, the REAL ID Act’s consolidation of judicial review of immigration matters has no effect on federal courts’ habeas jurisdiction over claims made in the extradition context.
Trinidad y Garcia’s habeas petition does not challenge a final order of removal; it challenges the legality of his extradition *959 proceeding. Therefore, the REAL-ID Act does not divest federal courts of § 2241 habeas jurisdiction over his claims.
2
Similarly, there is nothing in the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105-277, Div. G, Title XXII, 112 Stat. 2681 (codified at 8 U.S.C. § 1281 note), that repeals federal court habeas jurisdiction under § 2241, as the government also claims. FARRA provides, in relevant part, that:
Notwithstanding any other provision of law, and except as provided in the regulations [the Secretary of State promulgates pursuant to the Act], no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the [CAT] or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to [8 U.S.C. § 1252].
FARRA § 2242(d) (codified at 8 U.S.C. § 1231 note).
There is nothing at all in this section that purports to repeal federal habeas jurisdiction under § 2241. Rather, the section simply states it is not conferring jurisdiction. We have already held that this provision does not divest federal courts of habeas jurisdiction. Singh v. Ashcroft, 351 F.3d 435, 440-42 (9th Cir.2003). Our sister circuits agree. Saint Fort v. Ashcroft, 329 F.3d 191, 200-02 (1st Cir.2003); Wang v. Ashcroft, 320 F.3d 130, 140-42 (2d Cir.2003). This issue is settled, and there is no reason to revisit it.
3
Although, we need not resort to the special principles of statutory construction that apply to statutes purporting to divest federal courts of habeas jurisdiction, I would be remiss if I did not underscore them. The elimination of all forms of judicial review of executive detention would violate the Constitution. See Magana-Pizano v. INS, 200 F.3d 603, 608-09 (9th Cir.1999); U.S. Const. art. I, § 9, cl. 2. Given the constraints of the Suspension Clause, there is a strong presumption against construing statutes to repeal habeas jurisdiction. St. Cyr, 533 U.S. at 298, 121 S.Ct. 2271; Ramadan v. Gonzales, 479 F.3d 646, 652 (9th Cir.2007).
Indeed, the Supreme Court has required that (1) a statute contain “a particularly clear statement” before it can be construed as intending to repeal habeas jurisdiction, Demore v. Kim, 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) and (2) even if such a statement exists, courts are required to determine whether “an alternative interpretation of the statute is ‘fairly possible’” before concluding that the law actually repealed habeas relief, St. Cyr, 533 U.S. at 299-300, 121 S.Ct. 2271 (quoting Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)). Even if we were to credit the government’s argument that the language of the REAL-ID Act and FARRA could be construed as an attempt to repeal habeas jurisdiction for the claims at issue, neither statute could satisfy the demanding standards of St. Cyr. FARRA lacks sufficient clarity to survive the “particularly clear statement” requirement. The construction of the REAL ID Act discussed earlier is more than sufficient to demonstrate that an alternate statutory interpretation is “fairly possible.” Therefore, even if we were to credit the government’s statutory construction (and I do not), it would not survive scrutiny under St. Cyr.
B
In addition to possessing jurisdiction under § 2241, the district court also had *960 jurisdiction under the Constitution. Although the Constitution itself does not expressly grant federal habeas jurisdiction, it preserves the writ through the Suspension Clause.[3] Boumediene v. Bush, 553 U.S. 723, 743-46, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008); Ex Parte Bollman, 4 Cranch 75, 94-95, 2 L.Ed. 554 (1807). The Suspension Clause was designed to protect access to the writ of habeas corpus during those cycles of executive and legislative encroachment upon it. Boumediene, 553 U.S. at 745, 128 S.Ct. 2229.
The “traditional Great Writ was largely a remedy against executive detention.” Swain v. Pressley, 430 U.S. 372, 386, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (Burger, C.J., concurring); see also Darnel’s Case, 3 How. St. Tr. 1 (K.B. 1627). There have been numerous occasions in our history when Congress has limited statutory access to judicial relief in the immigration context. See, e.g., The Immigration Act of 1917, 39 Stat. 874; the Immigration Act of 1907, 34 Stat. 898; the Immigration Act of 1891, 26 Stat. 1084; the Chinese Exclusion Act, 22 Stat. 58 (1882). However, the Supreme Court has repeatedly rebuffed arguments that these statutes foreclosed habeas corpus relief. St. Cyr, 533 U.S. at 304-08, 121 S.Ct. 2271; Heikkila v. Barber, 345 U.S. 229, 234-35, 73 S.Ct. 603, 97 L.Ed. 972 (1953); United States v. Jung Ah Lung, 124 U.S. 621, 626-32, 8 S.Ct. 663, 31 L.Ed. 591 (1888).
Of particular significance is Heikkila. In considering the Immigration Act of 1917, the Supreme Court wrote in Heikkila that the Act “clearly had the effect of precluding judicial intervention in deportation cases except insofar as it was required by the Constitution.” 345 U.S. at 234-35, 73 S.Ct. 603. After concluding an alien’s rights were not enlarged by enactment of the Administrative Procedure Act, the court acknowledged the role of habeas corpus relief, noting that: “Now, as before, he may attack a deportation order only by habeas corpus.” Id. at 235, 73 S.Ct. 603. Thus, even under legislation which intended to restrict all judicial review except as constitutionally required, the remedy of habeas corpus remained.
Thus, even if we adopted the government’s position that Congress foreclosed Trinidad y Garcia’s statutory habeas remedies, his resort to federal habeas corpus relief to challenge the legality of his detention would be preserved under the Constitution.
II
Having concluded that the district court had jurisdiction, the question then becomes the scope of habeas relief available to Trinidad y Garcia. Once a federal court has completed its extradition determinations under 18 U.S.C. § 3184, the Secretary of State in her discretion may determine whether the alien should be surrendered to the custody of the requesting state. Barapind, 225 F.3d at 1105. We have long held that it is the Secretary’s role, not the courts’, to determine “whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state.” Prasoprat v. Benov, 421 F.3d 1009, 1016 (9th Cir.2005); see also United States v. Smyth, 61 F.3d 711, 714 (9th Cir.1995).
However, certain aspects of the Secretary’s decision are reviewable. Barapind, 225 F.3d at 1106. The Convention Against Torture (CAT), as implemented by FAR-RA and State Department regulations, is binding domestic law. Id. Before finaliz *961 ing an extradition order, the Secretary of State has a clear and nondiscretionary duty pursuant to the implementing regulations to consider whether a person facing extradition from the U.S. “is more likely than not” to be tortured in the State requesting extradition when determining whether to surrender a fugitive to a foreign country by means of extradition. 22 C.F.R. § 95.2.
In assessing whether the Secretary has complied with her statutory and regulatory obligations, our review differs from the ordinary analysis that we apply to petitions for review of decisions on CAT claims by the Board of Immigration Appeals. Immigrations judges and the BIA are charged with deciding CAT claims on the evidence presented. See e.g., Nuru v. Gonzales, 404 F.3d 1207, 1217 (9th Cir.2005). Therefore, in reviewing BIA decisions, we have a developed administrative record before us.
Our role in reviewing the Secretary’s extradition determinations is far different because the surrender of a person to a foreign government is within the Executive’s powers to conduct foreign affairs and the Executive is “well situated to consider sensitive foreign policy issues.” Munaf v. Geren, 553 U.S. 674, 702, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008). For example, the Secretary’s extradition determination is not confined to matters of public record. She may make confidential diplomatic inquiries and receive confidential diplomatic assurances about the treatment of an ex-traditee. The Judiciary is “not suited to second-guess such determinations” because the Executive “possesses] significant diplomatic tools and leverage the judiciary lacks.” Id. Therefore, the proper separation of powers among the branches prevents us from inquiring into the merits of the Secretary’s extradition decision.
Although we cannot review the merits of the Secretary’s internal extradition review, the Secretary’s legal obligation to comply with the CAT, as implemented by FARRA and accompanying State Department regulations, is not a part of that review process. The Secretary could not, for example, refuse to conduct the review. Therefore, the scope of habeas review allows courts to examine whether the Secretary has complied with her non-discretionary obligations. This limited review process of simply determining that the Secretary has complied with the law is the least intrusive method of maintaining the delicate balance between the competing concerns of respecting executive prerogative in foreign relations and ensuring that the law has been followed.
The appropriate manner of review, and the one endorsed by the government at oral argument, is to require submission to the court of a certification or affidavit from the Secretary or her authorized designee certifying compliance with the non-discretionary obligations imposed by statute and regulation.
Once the district court determines that the Secretary has complied with her legal obligations, its review ends. Any further inquiry into the executive branch’s internal extradition review process would exceed our proper role under the Separation of Powers doctrine.
Ill
In this case, there is nothing in the record to indicate that the Secretary has fulfilled her non-discretionary obligations. The Johnson Declaration, which is the only evidence tendered by the government to the district court, only describes general procedures commonly used by the Department of State in extradition review. And it was executed before the Secretary made her determination, so it cannot form the basis for concluding that the Secretary has complied with her obligations in this case.
*962 The government suggested in briefing that the Secretary’s signature on the surrender warrant itself should be considered as proof of her determination that Trinidad y Garcia is not likely to be tortured. But the surrender warrant is not in the record. And we cannot rely on a purported admission by Trinidad y Garcia’s counsel that the warrant was issued. That statement was solely based on an oral conversation with a State Department official. Thus, we are placed in the unusual position of reviewing a final agency decision that is' not even part of the record.
Trinidad y Garcia has alleged in his habeas petition that the Secretary has not complied with FARRA’s implementing regulations and violated his right to due process. In the absence of any evidence that the Secretary has complied with the regulation, we lack sufficient basis in the record to review the district court’s order granting Trinidad y Garcia’s release. Therefore, the appropriate remedy is to vacate the district court order and remand the case to the district court with directions that the government may be afforded the opportunity to supplement the record with an appropriate declaration that the Secretary has complied with her non-discretionary statutory and regulatory duties.

. The REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, § 106, 119 Stat. 231, 310-11 (amending 8 U.S.C. § 1252).

. The relevant section is 8 U.S.C. § 1252(a)(4), which provides that:
"Notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e) of this section.”

. The Suspension Clause provides that: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.” U.S. Const, art. I, § 9, cl. 2.