**Jesus BERLANGA, Petitioner,**

v.

**Janet RENO, Attorney General of the United States,**

**Doris Meissener, Commissioner, Immigration and Naturalization Service,**

**Richard Cravener, Houston District Director, Immigration and Naturalization Service, Respondents.**

**No. Civ.A. H–98–2557.**

United States District Court, S.D. Texas; Houston Division.

May 25, 1999.

Jesus A. Macias, Attorney at Law, Houston, TX, for Jesus Berlanga, petitioner.

Howard E. Rose, Office of U.S. Attorney, Houston, TX, for respondents.

Howard E. Rose, Office of the U.S. Attorney, Houston, TX, for Doris Meissner, Comm. of Ins, defendant.

Howard E. Rose, Office of U.S. Attorney, TX, for Richard Cravener, Dist. Dir, U.S. Ins, defendant.

## AMENDED MEMORANDUM AND ORDER[1]

ATLAS, District Judge.

Petitioner Jesus Berlanga is a legal resident of the United States and a citizen of Mexico. Petitioner Berlanga is the subject of a final administration order of deportation. Petitioner challenges this order as unconstitutional through a Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2241. Respondents Janet Reno, United States Attorney General, Doris Meissener, Commissioner of Immigration and Naturalization Service, and Richard Cravener, Houston District Director, Immigration and Naturalization Service (collectively, "Respondents") oppose the relief sought by Petitioner and have filed a Motion to Dismiss ("Respondents' Motion") [Doc. # 7]. Petitioner Berlanga has filed an Opposition to Motion to Dismiss [Doc. # 8], to which Respondents now have filed an "Answer, Return and Supplement to Their Motion to Dismiss" [Doc. # 6] ("Motion Supplement").

This case involves application of the 1996 Congressional amendments to the INA, 8 U.S.C. § 1101 *et seq.*,[2] enacted in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 *et seq.* (Apr. 24, 1996) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Based on a careful review of the pleadings and the applicable but conflicting legal authorities, the Court concludes that there is no subject matter jurisdiction in the district court to address the constitutional claims raised by Petitioner. Even if this Court had jurisdiction, the Court would conclude that Petitioner has failed to state a claim upon which relief may be granted and thus the Motion to Dismiss should be **GRANTED.**

## I. FACTUAL BACKGROUND

Petitioner is a twenty-eight year old native and citizen of Mexico. Petitioner legally entered the United States in 1970. Since then, he has maintained legal resident status in the United States, but never has sought to obtain United States citizenship despite eligibility to do so in 1975. On May 3, 1994, Petitioner was found guilty in the 209th District Court of Harris County, Texas of unlawfully, intentionally, and knowingly distributing at least 400 grams of cocaine, and received a sentence of 16 years in the Texas Department of Corrections (now known as the Texas Department of Criminal Justice–Institutional Division ("TDCJ–ID")).

While serving his sentence at the TDCJ–ID, an INS agent interviewed Petitioner to determine if he was subject to deportation. The INS concluded that Petitioner was a deportable alien due to his felony conviction. In particular, the INS agent concluded that Petitioner was in violation of Immigration and Nationality Act ("INA") § 241(a)(2)(B) because of his conviction of a controlled substance violation, and INA § 241(a)(2)(A)(iii) due to the fact that he was convicted of an aggravated felony. *See* Petition for Writ of Habeas Corpus, Complaint for Declaratory Injunctive Relief, and Request for Stay of Deportation ("Petition") [Doc. # 1], at 10.

Deportation proceedings were initiated on June 19, 1996, with service by the Immigration and Naturalization Service ("INS") Order to Show Cause ("OSC") upon Petitioner. *Id.* The OSC was filed in

---

1. This Memorandum and Order amends and supersedes the Memorandum and Order signed on May 19, 1999. That Order is vacated.

2. The bulk of this chapter originally was enacted on June 27, 1952, and was amended in pertinent part in 1952 and 1961. These statutes enacted in 1952 and 1961 generally are known as the Immigration and Nationality Acts of 1952 and 1961.

Immigration Court on September 10, 1996. Shortly thereafter, Petitioner requested relief from deportation pursuant to INA § 212(c), 8 U.S.C. § 1182(c), repealed in 1996 by the AEDPA, Pub.L. 104–208, § 304(b), 110 Stat. 3009–597 (1996). *Id.*

Petitioner's deportation hearing took place on April 8, 1997. Petitioner admitted the factual allegations in the OSC and conceded deportability as charged. *Id.* At that time, Petitioner's request for relief from deportation under INA § 212(c) was denied. *Id.* The Immigration Judge ("IJ") found that Petitioner's controlled substance felony conviction made him statutorily ineligible for all requested relief from deportation, and ordered him deported to Mexico. *See* 8 U.S.C. § 1182(c), as amended by the AEDPA § 440(d). Petitioner timely appealed the decision to the Board of Immigration Appeals ("BIA"). He argued that application of the AEDPA to aliens who had filed for a waiver of deportation under INA § 212(c) of the Act prior to the enactment date of the AEDPA is contrary to the intent of Congress and is, therefore, an impermissible retroactive application of the law contrary to the intent of Congress. Petitioner argues alternatively that application of the AEDPA is a violation of the Due Process Clause of the Fifth Amendment because the AEDPA causes the INS to discriminate between similarly situated members of a class (all aliens) on the basis of a distinction which has no rational relation to the purpose of INA § 212(c). *Id.* The BIA dismissed the appeal and affirmed the deportation order

in a decision dated May 6, 1998. *Id.* Petitioner then filed a petition for review with the Fifth Circuit, which was dismissed on July 16, 1998, for lack of jurisdiction.

Petitioner now seeks review of the administrative deportation decision through a Petition for Writ of Habeas Corpus [Doc. # 1] filed in this Court on August 6, 1998.[3]

## II. *SUMMARY OF PARTIES' CONTENTIONS*

Petitioner contends that lawful permanent residents may obtain review of deportation orders under the Suspension Clause of the United States Constitution, U.S. Const. art. I, § 9, cl. 2,[4] under 28 U.S.C. § 2241(c) (the codification of the "Great Writ"), under 28 U.S.C. § 1651 ("All Writs Act"), and under 28 U.S.C. § 1331 (federal question jurisdiction).

Respondents first argue that this District Court lacks subject matter jurisdiction to review Petitioner's habeas corpus claims challenging the INS's deportation order. Respondents contend that the 1996 changes to the INA through the AEDPA § 440(a) and the IIRIRA § 309(c)(4)(G) (with specific reference to the transitional rules) preclude all judicial review—including habeas—of orders of deportation (now called "removal")[5] issued to those immigrants, such as Petitioner, who are deportable because of having committed certain crimes. Respondents also argue that the district court lacks subject matter jurisdiction under 28 U.S.C. § 2241[6] because INA

---

**3.** The INS has agreed not to deport Petitioner until this case is concluded.

**4.** *See infra* Section IV.

**5.** Under the IIRIRA, in cases filed after April 1, 1997, the term "removal" refers to processes that previously were called "deportation" and "exclusion." *See, e.g.,* IIRIRA § 304(a); *see also* R.H. Fallon, Jr., *Applying the Suspension Clause to Immigration Cases,* 98 Columl.Rev. 1068, 1080 n. 61 (1998) ("Fallon").

**6.** 28 U.S.C. § 2241 (1994) states in pertinent part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

(b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

(c) The writ of habeas corpus shall not extend to a prisoner unless—

§ 242(g), 8 U.S.C. § 1252(g), precludes all review of exclusion, deportation or removal orders in district courts. If anything, Respondents contend, the sole judicial authority to exercise habeas corpus review of the agency's action rests with the court of appeals.

In Respondents' Motion Supplement, they argue additionally that this district court lacks subject matter jurisdiction after the 1996 amendments to the INA, because Petitioner has not asserted a violation of a constitutional right amounting to a fundamental miscarriage of justice. This, Respondents argue, is a prerequisite to federal court jurisdiction in habeas corpus matters arising from immigration administrative orders. Respondents point out that the scope of constitutional review available to convicted aliens is very limited and does not encompass review of the denial of discretionary relief; that the BIA properly relied on AEDPA § 440(d) to preclude Petitioner from receiving relief from deportation under 8 U.S.C. § 1182(c); and that Petitioner has raised no viable equal protection claim.

Petitioner counters that subject matter jurisdiction to review deportation orders still exists under the general habeas corpus powers invested in the United States district courts, since neither the constitutional habeas power nor the statutory grant of habeas jurisdiction found in 28 U.S.C. § 2241 has been explicitly and expressly repealed by either the AEDPA or the IIRIRA. Petitioner also argues that retroactive application of AEDPA § 440(d) is unlawful, if not unconstitutional.

On the merits, Petitioner argues that the INS's application of AEDPA § 440(d)

> (1) He is in custody under or by color of the authority of the United States ...; or
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order ... of a court or judge of the United States; or
> (3) He is in custody in violation of the Constitution or laws ... of the United States....

is unconstitutional as applied to him. Petitioner points out that the provision prevents waivers of deportation only as to aliens subject to deportation, not to aliens excluded from this country. He argues that § 440(d) violates equal protection principles. Petitioner concludes that he should be entitled to discretionary relief provided by INA § 212(c) (1961), which was available prior to the AEDPA and IIRIRA.

### III. *1996 CHANGES IN THE IMMIGRATION LAWS*

Prior to 1996, an alien had two avenues for judicial review of deportation orders. Aliens were allowed to seek direct review of a decision of the BIA[7] in specified courts of appeals. *See* INA § 106(a), 8 U.S.C. § 1105a(a) (1994) (repealed 1996); *see also United States ex rel. Marcello v. District Director, INS*, 634 F.2d 964, 968 (5th Cir.1981); *Olvera v. Reno*, 20 F.Supp.2d 1062, 1063 (S.D.Tex.1998). The appellate courts were given exclusive jurisdiction to hear these challenges. *See id.* The 1961 Act also provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10) (1994) (repealed 1996); *see also Olvera*, 20 F.Supp.2d at 1063.

These avenues were restricted by Congress in 1996 with the passage of two important pieces of legislation. First, Congress enacted § 401(e) of the AEDPA, entitled "Elimination of Custody Review by Habeas Corpus," which repealed the existing version of § 1105a(a)(10). AED-

7. Appeal to the BIA of an IJ's decision is the final step of the administrative process. The permanent rules generally do not apply to deportation proceedings pending on the "effective date" of the pertinent IIRIRA provisions, April 1, 1997, which was the first day of the first month beginning 180 days after September 30, 1996, the day the IIRIRA was enacted.

PA § 401(e), 110 Stat. 1268.[8] Congress simultaneously enacted AEDPA § 440(a), 110 Stat. 1267–77, which added a new § 1105a(a)(10) to Title 8 of the United States Code. As amended, § 1105a(a)(10) provides that:

> [a]ny final order of deportation against an alien who is deportable by reason of having committed [certain criminal offenses] shall not be subject to review by any court.

AEDPA § 440(a), codified as 8 U.S.C. § 1105a(a)(10) (1996).

A few months later, on September 30, 1996, Congress enacted the IIRIRA, which made additional fundamental changes to the scope of judicial review of the INS's rulings and related procedures. *See* IIRI-RA §§ 306(d), 671(e)(3), 671(e)(4) (revising materially subsection (a)(1) to § 1105a); and 308(g)(10)(H) (amending AEDPA § 440(a) and IIRIRA § 306(d)), Pub.L. 104–208, 110 Stat. 3009. Section 306(d) of the IIRIRA amended the new AEDPA by eliminating any time restrictions on the predicate offenses that may be cause for deportability. *See* 110 Stat. 3009–612, amending 8 U.S.C. § 1182; *see also* Historical Statutory Notes to 1996 Amendments (West Supp.1998). In addition and most significant to this case, IIRIRA § 306 amended the INA by imposing a severe restriction on judicial review of BIA final actions concerning aliens who are convicted of criminal offenses. *See* 8 U.S.C. § 1105a(a)(10); IIRIRA § 306(a)(2), amending 8 U.S.C. § 1252(a)(2)(C);[9] *see also Sabino,* 8 F.Supp.2d at 625.

The IIRIRA actually contains two sets of provisions, the "permanent" provisions that apply to removal proceedings commenced after April 1, 1997, and the "transitional" provisions that apply to deportation proceedings commenced before April 1, 1997 in which final administrative orders were [not] issued prior to October 30, 1996. *See* IIRIRA § 309(c)(1), 110 Stat. 3009–625, amended by Act of Oct. 11, 1996, Pub.L. 104–302, 110 Stat. 3656, 3657; see also *Olvera,* 20 F.Supp.2d at 1063 and n. 3 (citing IIRIRA § 309(c)(1)); *Eyoum v. INS,* 125 F.3d 889 (5th Cir.1997); *Lerma de Garcia v. INS,* 141 F.3d 215 (5th Cir. 1998) (deportation order became final on April 29, 1997); *Nguyen v. INS,* 117 F.3d 206 (5th Cir.1997) (deportation order became final on May 19, 1997); *Ibrik v. INS,* 108 F.3d 596, 597 (5th Cir.1997); *Sabino,* 8 F.Supp.2d at 632, 633. The transitional rules are applicable to this case.

As to jurisdiction of this or any court, the transitional rules provide that "[t]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in [certain code sections]." IIRIRA § 309(c)(4)(G).

## IV. *HABEAS AUTHORITY OF FEDERAL COURTS*

The Suspension Clause of the Constitution provides that:

> The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

U.S. Const. art. I, § 9, cl. 2. It appears that federal courts do not have jurisdiction to grant habeas corpus relief in the absence of an enabling statute. Long ago, *in dicta,* the Supreme Court stated "federal courts possess no inherent common law jurisdiction, the power to grant the writ of

---

**8.** Prior to 1996, 8 U.S.C. § 1105a(a)(10) gave aliens in custody the right to seek judicial review of orders of deportation by habeas corpus proceedings. *See Ex rel. Marcello,* 634 F.2d at 971.

**9.** Section 1252(a)(2)(C), as amended, is entitled "Orders against criminal aliens," and states:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [certain criminal offenses].

habeas corpus must be given by written law." *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 93, 2 L.Ed. 554 (1807) (Chief Justice Marshall). The Supreme Court noted that the Constitution itself does not authorize courts to grant the writ, and thus the Suspension Clause was not effectual until Congress gave federal courts the power to grant the writ of habeas corpus. *Id.* at 94; *see also Sabino v. Reno*, 8 F.Supp.2d 622, 627 (S.D.Tex.1998).

In the Judiciary Act of 1789 the first Congress authorized federal courts to grant the writ of habeas corpus for the purpose of an inquiry into the cause of commitment when a prisoner is "in custody under or by color of the authority of the United States, or [is] committed for trial before some court of the same."

*Sabino*, 8 F.Supp.2d at 627–28.[10] This provision is the direct ancestor of 28 U.S.C. § 2241(c)(1), which uses almost identical language. *See Felker v. Turpin*, 518 U.S. 651, 659 n. 1, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Sabino*, 8 F.Supp.2d at 627–28.

Until 1961, immigration statutes made no provision for judicial review of exclusion or deportation proceedings. *See Sabino*, 8 F.Supp.2d at 627. Nevertheless, once an alien was in custody, he or she had the opportunity to apply for writs of habeas corpus. *See Nishimura Ekiu v. United States*, 142 U.S. 651, 659, 12 S.Ct. 336, 35 L.Ed. 1146 (1892) ("An alien immigrant, prevented from landing by any such officer claiming authority to do so under an act of Congress, and thereby restrained of his liberty, is doubtless entitled to a writ of habeas corpus to ascertain whether the restraint is lawful."); *see Sandoval v. Reno*, 166 F.3d 225, 233 (3d Cir.1999) ("*Nishimura Ekiu* reaffirmed the availability of habeas to challenge immigration decisions notwithstanding the finality provision [in the 1891 statute]"). *Cf. Umanzor v. Lambert*, 782 F.2d 1299 (5th Cir.

1986) (holding that alien could proceed by application for writ of habeas corpus when application was filed after alien boarded plane to be deported but before plane left United States airspace because alien was deemed "in custody"). In fact, the Supreme Court in the late nineteenth and early twentieth centuries continued to review the legality of deportation and exclusion orders by habeas corpus despite Congress's intent to make these administrative decisions non-reviewable to the fullest extent constitutionally possible. *See Heikkila v. Barber*, 345 U.S. 229, 234–35, 73 S.Ct. 603, 97 L.Ed. 972 (1953); *see also* Jonathan L. Hafetz, "The Untold Story of Noncriminal Habeas Corpus and the 1996 Immigration Acts," 107 YALE L.J. 2509, 2514 & nn. 40–46 (1998). Habeas jurisdiction "persisted" even when Congress enacted the Immigration Act of 1917 (repealed in 1952) and the Administrative Procedure Act ("APA") (5 U.S.C. § 500 *et seq.*) in 1946, purporting to make decisions of the Attorney General on immigration decisions "final." *See Heikkila v. Barber*, 345 U.S. at 235, 73 S.Ct. 603; *see also Sandoval*, 166 F.3d at 233; *Sabino*, 8 F.Supp.2d at 627–28.

It is in this context that the Court must consider the impact of Congress's 1996 legislation on district courts' habeas corpus jurisdiction for aliens receiving final orders of removal because of criminal convictions.

## V. *DISCUSSION*

### A. *Jurisdiction*

Respondents argue that AEDPA § 440(a) and IIRIRA § 309(c)(4)(G) preclude review of any form in the district court, citing *Mendez–Rosas v. INS*, 87 F.3d 672 (5th Cir.1996), and *Pichardo v. INS*, 104 F.3d 756 (5th Cir.1997). Respondents' Motion, at 6. Respondents further contend that the Fifth Circuit's reference to the right to seek a writ of habeas corpus

---

10. Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 81. "Habeas corpus," as used in the Judiciary Act, means the Great Writ, habeas corpus ad subjiciendum. *See id.* at 95; *Stone v. Powell*, 428 U.S. 465, 474 n. 6, 96 S.Ct. 3037, 3042 n. 6, 49 L.Ed.2d 1067 (1976).

or judicial review under the Suspension Clause is reserved for the court of appeals, *not* the district court.[11]

### 1. IIRIRA § 306(a)

Respondents focus much of their argument on the portion of IIRIRA § 306(a) that enacted the permanent provision in INA § 242(g), 8 U.S.C. § 1252(g).[12] Section 306(a) (8 U.S.C. § 1252(g)) does not support Respondents' arguments. First, the case at bar arises under the transitional provisions, not the permanent provisions, of the IIRIRA. Second, in *Reno v. American–Arab Anti–Discrimination Committee,* —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court held that § 1252(g) must be very narrowly construed. The reach of § 1252(g) is limited to the three types of INS decisions explicitly listed in the statute, "to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." By its own terms, § 1252(g) does not apply to the action or decision by the INS that it lacked discretion to waive deportation for Berlanga, an alien convicted of an aggravated felony. *See Waddell v. Board of Immigration Appeals,* 1999 WL 151661, at *3

11. *See Lerma de Garcia,* 141 F.3d at 217; *Williams,* 114 F.3d at 84. Respondents also insist that Petitioner in actuality is seeking judicial "review," akin to a petition for review, of the BIA's action, and thus only the court of appeals, if any court, has jurisdiction. Respondents contend that Petitioner's designation of this action a "petition for writ of habeas corpus" merely elevates form over substance. The Court does not need to address this nuanced alternative to Respondents' main contentions. The Court treats this proceeding as a traditional application for writ of habeas corpus, but nevertheless concludes Respondents are correct that this Court lacks jurisdiction.

12. 8 U.S.C. § 1252(g) states:

**Exclusive Jurisdiction**
Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceed-

(E.D.La. Mar.11, 1999) (Vance, J.).[13] Instead, the Court finds that this case is governed by pre-IIRIRA law (as amended by the AEDPA) and the transitional provisions of the IIRIRA. *See Lerma de Garcia,* 141 F.3d at 216.

### 2. AEDPA § 440(a)

■ The next issue is whether AEDPA § 440(a) or IIRIRA § 309(c)(4)(G)'s amendments to the INA, which purport to restrict federal courts' jurisdiction to review final orders of deportation by the BIA, prevent this District Court from exercising jurisdiction over Petitioner Berlanga's petition for a writ of habeas corpus. This Court concludes that its jurisdiction has been eliminated and it may not entertain Petitioner's claims.

AEDPA § 440(a) added a new INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10), 110 Stat. 1276–77.[14] The Fifth Circuit has held that AEDPA § 440(a) became effective on April 24, 1996, the date the President signed the AEDPA into law, and that it applies retroactively to petitions for habeas corpus that were pending when the AEDPA was enacted. *See Williams v. INS,* 114 F.3d 82, 83 (5th Cir.1997); *cf.*

ings, adjudicate cases, or execute removal orders against any alien under this chapter.

13. The Supreme Court noted the Attorney General's decision to do such things as "include various provisions in the final order that is the product of the adjudication" would not be a decision or action to adjudicate a case within § 1252(g). *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. at ——, 119 S.Ct. at 942 (1999). Whatever Congress may have meant by the phrase, "adjudicate cases," it appears that Berlanga's claims are not included, and his claims are excluded from § 1252(g). This limiting interpretation also avoids a conflict with the transitional scheme for judicial review set forth in the IIRIRA § 309(c)(4).

14. Section 1105a(a)(10) provides:

Any final order of deportation against an alien who is deportable by reason of having committed [certain drug and other criminal offenses] shall not be subject to review by any court.

*Lerma de Garcia v. INS,* 141 F.3d 215 (5th Cir.1998), *reh'g en banc denied,* 159 F.3d 1358 (1998). The same conclusion has been reached by most other circuit courts. *Yang v. INS,* 109 F.3d 1185, 1190–91 (7th Cir.1997); *Boston–Bollers v. INS,* 106 F.3d 352, 355 (11th Cir.1997); *Kolster v. INS,* 101 F.3d 785, 790–91 (1st Cir.1996); *Salazar–Haro v. INS,* 95 F.3d 309, 311 (3d Cir.1996); *Hincapie–Nieto v. INS,* 92 F.3d 27, 30–31 (2d Cir.1996); *Qasguargis v. INS,* 91 F.3d 788, 789–90 (6th Cir.1996); *Duldulao v. INS,* 90 F.3d 396, 399–400 (9th Cir.1996); *Mendez–Rosas v. INS,* 87 F.3d 672, 676 (5th Cir.1996); *Sabino,* 8 F.Supp.2d at 630. Thus, this Court concludes that INA § 106(a), 8 U.S.C. § 1105a(a)(10), as amended in 1996 (by AEDPA § 440(a)), must be applied in this case. The scope of this statute's effect on the district court's habeas jurisdiction thus is the next issue.

Petitioner Berlanga contends that the avenue for relief from final INS deportation orders is habeas jurisdiction in the district court. Berlanga relies predominantly on *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). In *Felker,* the Supreme Court considered whether the provisions of the AEDPA limiting the Supreme Court's jurisdiction over appeals and writs of certiorari from lower court decisions on "successive" habeas petitions constituted an impermissible limitation on the Supreme Court's original jurisdiction. The Supreme Court began by discussing its prior holding in *Ex Parte Yerger,* 8 Wall. 85, 19 L.Ed. 332 (1868). In *Yerger,* the Supreme Court found that repeals of habeas jurisdiction by implication "are not favored." *Felker,* 116 S.Ct. at 2338. The *Felker* Court reaffirmed this

line of reasoning and held that the AEDPA did not implicitly limit the Supreme Court's original habeas jurisdiction. *Id.* at 2339.

Some circuit and district courts have applied the *Felker* reasoning to § 440(a) (and IIRIRA § 309(c)(4)(G)) since neither the AEDPA nor the IIRIRA specifically refers to the grant of habeas jurisdiction in § 2241. These courts have held that § 2241 habeas jurisdiction remains intact. *See, e.g., Sandoval,* 166 F.3d at 238; *Henderson v. INS,* 157 F.3d 106, 119–20 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Goncalves v. Reno,* 144 F.3d 110 (1st Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). Other appellate courts have determined that the AEDPA § 440(a) (and IIRIRA § 306 and/or § 309) eliminated statutory habeas jurisdiction under § 2241 because of the categoric language in these provisions. *See LaGuerre v. Reno,* 164 F.3d 1035, 1038–40 (7th Cir.1998), *reh. denied,* —— F.3d —— (Apr. 9, 1999); *Richardson v. Reno,* 162 F.3d 1338, 1357–60 (11th Cir. 1998), *pet. for cert. filed,* 67 USLW 3561 (Feb. 23, 1999) (No. 98–1361); *Ramallo v. Reno,* 114 F.3d 1210, 1214 (D.C.Cir.1997) (courts still have jurisdiction to entertain constitutional questions); *Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.1997).

Courts are deeply split on the difficult jurisdictional issues raised by these amendments. *See Henderson,* 157 F.3d at 119 n. 9 (holding that § 2241 jurisdiction survives in district court due to circuit precedent), *i.e., Jean–Baptiste v. Reno,* 144 F.3d 212, 219–20 (2d Cir.1998);[15] *Hin-*

**15.** The *Henderson* court's entire footnote deserves attention in light of the extent to which the holding in that case is cited as strong precedent for district court jurisdiction under § 2241:

Were we not bound by *Jean–Baptiste,* the members of this panel would be strongly inclined to find that the proper mechanism for judicial review is by petition for review in the courts of appeals, rather than by

§ 2241 habeas in the district courts. Neither approach is without problems in terms of the text and legislative history, but review in the courts of appeals seems more consistent with congressional intent. Congress clearly meant to streamline judicial review, and it seems perverse to find that the new laws actually added a layer of review in the district courts that did not generally exist before. Moreover, appeal of

*capie– Nieto v. INS,* 92 F.3d 27 (2d Cir. 1996) (but noting that the "members of the panel would be strongly inclined to find that the proper mechanism for judicial review is by petition for review in the courts of appeals, rather than by § 2241 habeas in the district courts."); *Magana–Pizano v. INS,* 152 F.3d 1213, 1216–18 (9th Cir. 1998), *amended,* 159 F.3d 1217 (9th Cir. 1998) *(per curiam ), vacated,* —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999) (in light of *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)); *Hose v. INS,* 141 F.3d 932, 934–35 (9th Cir.) (holding that INA § 242(g) (8 U.S.C. § 1252(g) deprives district court of habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241), *opinion withdrawn and reh'g en banc granted,* 161 F.3d 1225 (9th Cir. 1998)); and various district courts.[16]

The Court concludes that *Felker* does not support Petitioner's contention that ha-

beas jurisdiction survives AEDPA § 440(a) in the district court for challenges to the INA as amended by the AEDPA. In *Felker,* the AEDPA provision was narrow, as were the provisions in the cases on which *Felker* relied. In *Felker,* the AEDPA provision in issue specifically eliminated two avenues to review by the Supreme Court—appeals and writs of certiorari— but did not mention the third avenue of original jurisdiction. This provision did not foreclose the form of jurisdiction that the Supreme Court held that it retained, original jurisdiction. *Felker,* 518 U.S. at 660, 116 S.Ct. 2333; *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868); *Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868).

In the case at bar, in contrast, AEDPA § 440(a) states that review of criminal aliens' final deportation orders is unavailable in "any" court. *See Richardson,* 162 F.3d at 1357 and n. 91 (citing § 1252(g)).[17]

---

agency decisions directly to the courts of appeals is the standard mode of review of administrative actions. *See, e.g.,* 5 U.S.C. § 7123 (1994) (establishing that orders of the Federal Labor Relations Authority are reviewed by the courts of appeals); 7 U.S.C. § 18(e) (1994) (setting forth that orders of the Commodity Futures Trading Commission are reviewable by the courts of appeals). And the Supreme Court has directly held that such review can be implied when its unavailability would raise serious constitutional issues. *See Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). Finally, were we to hold that direct review was available, so long as the review that remained was the equivalent of habeas, we would avoid all constitutional difficulties associated with a repeal of habeas. *See Swain v. Pressley,* 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) ("[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.").
*Henderson,* 157 F.3d at 119 n. 9.

**16.** *E.g., Cabrera v. Reno,* 5 F.Supp.2d 244, 245–46 (D.N.J.1998) (same); *Ray v. Reno,* 3 F.Supp.2d 1249, 1251 (D.Utah 1998) (same); *Rusu v. Reno,* 999 F.Supp. 1204, 1209–10 (N.D.Ill.1998) (same); *Mendez–Tapia v. Sonchik,* 998 F.Supp. 1105, 1107 (D.Ariz.1998)

(same); *Marriott v. Ingham,* 990 F.Supp. 209, 213–14 (W.D.N.Y.1998) (same); *Mustata v. United States Dep't of Justice,* 979 F.Supp. 536, 539 (W.D.Mich.1997) (same); *Mayers v. Reno,* 977 F.Supp. 1457, 1461 (S.D.Fla.1997) (same); *Udenze v. Strapp,* 977 F.Supp. 418, 421 (N.D.Tex.1997) (same); *Moore v. District Director, INS,* 956 F.Supp. 878, 882 (D.Neb. 1997) (same); *see also Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.) (stating in dicta that "effective April 1, 1997, § 306(a) of the IIRIRA [INA § 242] abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute"), *cert. denied sub nom, Katsoulis v. INS,* —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997).

**17.** As explained in *Richardson,* 162 F.3d at 1357 and n. 91:

When Congress says "any," it means "any" law, which necessarily includes § 2241. *Id.* citing *United States v. Gonzales,* 520 U.S. 1, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) ("Read naturally the word 'any' has an expansive meaning, that is 'one or some indiscriminately of whatever kind.' ") (citation omitted); *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1185 (11th Cir.1997) (" 'Congress did not add any language limiting the breadth of that word,' so 'any' means all.") (quoting in part *Gonzales, supra ).*
To the extent that the Eleventh Circuit in *Richardson* relied on 8 U.S.C. § 1252(g),

This unambiguous statement is a clear expression of Congressional intent to deprive aliens subject to 8 U.S.C. § 106(a)(10), as amended by § 440(a), of any right to involve the courts in habeas review of deportation or removal orders. Repeal by implication is not involved. Congress's language limiting jurisdiction leaves no room for district court judicial review of Berlanga's constitutional claims brought under § 2241 challenging the INA as amended by the AEDPA, even though the AEDPA amendments do not specifically refer to § 2241. *See La-*

*Guerre,* 164 F.3d at 1040; *Waddell,* 1999 WL 151661 at *3; *Olvera v. Reno,* 20 F.Supp.2d 1062, 1064 (S.D.Tex.1998); *cf. Parra v. Perryman,* 172 F.3d 954, 956 (7th Cir.1999) (allowing for a limited—but inapplicable—exception to the general rule that habeas jurisdiction did not survive in the district court pursuant to § 2241 as to removal orders).[18]

The Court reaches this conclusion despite the thoughtful contrary opinions in various other circuits' appellate decisions. *Sandoval,* 166 F.3d 225; *Henderson,* 157

which recently was limited significantly by *Reno v. American–Arab Anti–Discrimination,* the court's reasoning remains valid since the reasoning also is compelled by 8 U.S.C. § 1252(a)(2)(C), enacted by IIRIRA § 306(a). *See also United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927).

18. This conclusion does not mean that the Court implicitly holds that Congress's repeal of § 2241 affects the courts of appeals' habeas or other authority to review constitutional issues or to examine their own jurisdiction in a particular case. Indeed, such repeal, even if intended by Congress, should not be deemed effective since its implementation would violate the Suspension Clause, the Due Process Clause, or the separation of powers doctrine. In *Yang,* the Seventh Circuit noted that the Supreme Court "long ago made it clear that [the constitutional] writ does not offer what our petitioners desire: review of discretionary decisions by the political branches of government." *Yang,* 109 F.3d at 1195 (citing *United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927); *United States ex rel. Tisi v. Tod,* 264 U.S. 131, 132, 44 S.Ct. 260, 68 L.Ed. 590 (1924)). The Seventh Circuit then summarily stated, in dismissing four petitions for review from BIA actions, that the IIRIRA § 306(a), codified at 8 U.S.C. § 1252(g), "abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute." *Yang,* 109 F.3d at 1195. The *Yang* court noted that "28 U.S.C. § 2241 offers an opportunity for collateral attack more expansive than the Great Writ preserved in the Constitution." *Id.* at 1195 (citing *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)). The Seventh Circuit ultimately in *Yang* ruled that an error of law does not support a writ of habeas corpus, *id.* at 1196 (citations omitted), and an alien is merely

entitled to procedural due process during the administrative proceeding leading to his deportation. *Id.* The *Yang* court stated that the fundamental obligations the due process clause places on the government—notice and opportunity to be heard—have been preserved. *Id.* The *Yang* court then defined its judicial review function by stating:

When judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists. The doctrine that a court has jurisdiction to determine whether it has jurisdiction rests on this understanding. *Land v. Dollar,* 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947). More to the point, *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978), shows that application of a review-preclusion statute does not depend on the agency's findings.

Whether Yang is an alien deportable by reason of certain crimes is open to review, although the answer "yes" brings proceedings to an end. We think it highly unlikely that Congress meant to enable the Attorney General to expel an alien with a clean record just by stating that the person is a criminal, without any opportunity for judicial review of a claim of mistaken identity or political vendetta. Certainly the text of § 106(a)(10) is consistent with the normal approach reflected in *Adamo Wrecking,* and . . . giving § 106(a)(10) this reading solves a potential constitutional problem.

*Yang,* 109 F.3d at 1192. The Seventh Circuit then added the court of appeals would also have power to ascertain if the deportation was for "a reason other than a statutorily permissible one might well affect the operation of § 106(a). *Cf. Quackenbush v. Allstate Insurance Co.,* 517 U.S. 706, 710–14, 116 S.Ct. 1712, 1718–20, 135 L.Ed.2d 1 (1996); *Czerkies v. Department of Labor,* 73 F.3d 1435 (7th Cir.1996) (en banc)." *Id.*

F.3d at 118; *Magana–Pizano,* 152 F.3d at 1221, *amended,* 159 F.3d 1217 (9th Cir. 1998) *(per curiam ), vacated in light of Reno v. American–Arab Anti–Discrimination Committee,* —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); *Goncalves,* 144 F.3d at 120.[19] These courts' reasoning simply disregards Congress's unambiguous and categoric expression of intent in AEDPA § 440(a) to eliminate from the district court's "judicial review" authority all habeas jurisdiction over challenges to final deportation orders. In limiting the apparent breadth of AEDPA § 440(a) (as well as that of IIRIRA

§ 309(c)(4)(G)), these courts have concluded that § 440(a) did not reach any courts' § 2241 habeas jurisdiction that pre-existed creation of judicial review of immigration decisions through petitions for review and the Administrative Procedure Act ("APA") review. Support for this creative analysis simply is not found within the AEDPA's language adopted by Congress or the opinions cited by these courts. At a minimum, Congress's intent should be interpreted to eliminate all judicial review except that which is constitutionally necessary, and to place the remaining judicial review power in the courts of appeals.[20]

**19.** For instance, in *Sandoval,* 166 F.3d at 232, the Third Circuit addressed the identical provisions challenged by Petitioner Berlanga. Relying on the precept that revocation of habeas jurisdiction be done by express congressional intent (*Id.* at 232), the court of appeals analyzed each applicable section of both the AEDPA and the IIRIRA, and concluded that Congress had not removed § 2241 habeas jurisdiction in the district courts by these enactments. The court of appeals concluded that AEDPA § 401(e)'s elimination of the district court's authority by repealing former § 106(a)(10) was not intended to be any removal of § 2241 habeas jurisdiction since that court determined that the pre-AEDPA § 106(a)(10) was not actually a grant of habeas jurisdiction in the first place. *Id.* at 232. Rather, the Third Circuit concluded that former § 106(a) was an "acknowledgment that the district courts continued to have habeas jurisdiction...." and that the repeal of § 106(a)(10) by § 401(e) could not represent a withdrawal of Congressionally conferred habeas jurisdiction under § 2241. *Id.* This conclusion, however, is not compelled by the complicated history of aliens' rights under the United States immigration laws over the years. Even if this conclusion is correct, the Court is not persuaded that the analysis of § 401(e) answers the issue raised by AEDPA § 440(a). The *Sandoval* court discussed AEDPA § 440(a) in combination with IIRIRA § 309(c)(4)(G), and summarily concluded that those provisions were intended to repeal only petitions for review and Administrative Procedure Act review, not habeas jurisdiction. Nothing in the *Sandoval* opinion explained this distinction.

The Third Circuit's decision appears to have been driven by that court's constitutional concerns if AEDPA § 440(a) were construed to repeal all of § 2241 habeas jurisdiction, since the court deemed the Suspen-

sion Clause to forbid a complete suspension of the right to seek a writ of habeas corpus. *See, e.g., id.* at 237. Neither *Sandoval,* nor the other courts that reach similar results, address why Congress could not have intended to repeal § 2241 habeas to the extent of the district court's powers but interpret the repeal to not apply to the authority of the circuit courts. It is clear that habeas relief that existed when the Suspension Clause was created was far more limited than that commonly thought of today, and the scope of the right to habeas relief has expanded well beyond that likely required by the Constitution. *See LaGuerre,* 164 F.3d at 1038; *Richardson,* 162 F.3d at 1365 n. 124.

In addition, certain courts that have reached the result that AEDPA § 440(a) cannot repeal § 2241 by implication have stated that this result was compelled by circuit precedent. For instance, the Second Circuit in *Henderson* noted that because it previously had upheld the pertinent provisions in the AEDPA and the IIRIRA limiting federal review on the basis of the belief that district courts would retain § 2241 jurisdiction. *Henderson,* 157 F.3d at 118, 119 n. 9 (citing *Jean–Baptiste v. Reno,* 144 F.3d 212, 220 (2nd Cir.1998)) (*see supra* note 15); *Magana–Pizano,* 152 F.3d 1213, 1220 (9th Cir.1998), *vacated by* —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999).

**20.** Congress expressed its awareness of the need for continued, albeit limited, habeas and judicial review authority. The IIRIRA § 306(c) (a permanent provision codified in 8 U.S.C. § 1252(c)) refers both to petitions for review of removal orders and petitions for habeas corpus. *See Humphries v. Various Federal USINS Employees,* 164 F.3d 936, 942 (5th Cir.1999). Congress's prominent, but narrow, reference to habeas corpus petitions

As noted by Judge Posner for the Seventh Circuit, Congress wanted to expedite the removal of criminal aliens from the United States by eliminating judicial review, not to delay removal by requiring aliens to start the review process in the district court rather than the court of appeals. In discussing Congress's omission of a reference to § 2241, and the Suspension Clause, the Seventh Circuit in *La-Guerre* stated:

> On the contrary, we cannot think of any theory under which Congress would have wanted section 440(a) to limit only review in the courts of appeals and leave intact whatever powers the old section 106(a)(10)—which, remember, section 440(a) repealed—had conferred on the district courts. The purpose of the new section was not to restore the pre–1961 regime and slow down deportation by creating two layers of judicial review,

rather than one as under the regime that prevailed for all deportees between 1961 and 1996. The purpose was to curtail and speed up judicial review of deportation orders directed against disfavored classes of criminals, such as drug offenders. If the effect of the new provision was, as our petitioners and the cases we have cited believe, to shift judicial review to the district court, followed of course by appeal to this court, then Congress enlarged judicial review for these deportees (and for no others!—the others remain under the 1961 procedure, which confines them to the courts of appeals except where direct review by those courts is unavailable) by allowing them to challenge their deportation in two courts rather than one.

*LaGuerre*, 164 F.3d at 1039.[21]

This result advances the longstanding precedent that Congress possesses plenary

in the IIRIRA in § 306(c), as it amends 8 U.S.C. § 1252, suggests that any remaining habeas or other judicial review jurisdiction is to rest solely with courts of appeals. Venue for judicial review is now limited to the court of appeals. *See* INA § 242(b)(2), 8 U.S.C. § 1252(b)(2) (Supp.1998) ("The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."). Congress explicitly created only one exception to this venue restriction—non-resident aliens summarily rejected at ports of entry without any removal proceedings are entitled to district court habeas review. *See* 8 U.S.C. § 1252(e)(2), (3) (Supp.1998); *see also Richardson*, 162 F.3d at 1354 n. 76, 1357 n. 93. As observed by the Seventh Circuit,

> [in these] new INA provisions, Congress has abbreviated judicial review to one place and one time: only in the court of appeals and only after a final removal order and exhaustion of all administrative remedies. In the IIRIRA, Congress strictly regulated the exclusive mode and timing of judicial review in order to remove overlapping jurisdiction and to prevent dilatory tactics previously used to forestall departure of aliens. *Richardson*, 162 F.3d at 1354 (citing INA §§ 242(b)(9), 242(d)(1), 8 U.S.C. §§ 1252(b)(9), 1252(d)(1) (Supp.1998)). Indeed, the petition for direct review in the court of appeals must be filed 30 days after a final order, as opposed to 90 days under the

pre-IIRIRA version of the INA. *Compare* INA § 242(b)(1), 8 U.S.C. § 1252(b)(1) (Supp. 1998), with former INA § 106(a)(1), 8 U.S.C. § 1105a(a)(1) (Supp.1996). *See Richardson*, 162 F.3d at 1354 and n. 80. The single explicit grant of district court habeas authority limited to non-residents who are summarily rejected at ports of entry makes sense since, in these narrow circumstances, there would be no meaningful administrative record or other basis on which the courts of appeals could rely to consider the non-resident's claims.

Even within this already restrictive judicial-review scheme that focuses virtually all remaining review authority in the courts of appeals, Congress "further limited what a court of appeals can review after a final removal order." *Id.* at 1354–55. Most significantly, § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review" "any final order of removal against an alien who is removable" because of certain criminal convictions. INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C) (Supp.1998). It is hard to imagine more definitive language.

**21.** The Seventh Circuit, in *LaGuerre* referred to its earlier decision in *Yang*, which held that the Suspension Clause does not require the availability of a writ of habeas corpus as broad as § 2241. *LaGuerre*, 164 F.3d at 1035. The *Yang* holding, however may be implicitly limited by the Seventh Circuit's ruling in *LaGuerre*. *Id.* at 1038–39. *LaGuerre*

power over immigration matters. *See Reno v. Flores,* 507 U.S. 292, 305, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government, ... over no conceivable subject is the legislative power of Congress more complete"); *Landon v. Plasencia,* 459 U.S. 21, 31, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (continuously present permanent resident alien has a right to due process; but "role of judiciary is limited to determining whether the procedures meet the essential standard of fairness under the due process clause"); *cf. Heikkila v. Barber,* 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953) (function of courts on habeas is enforcement of due process requirements under Constitution which is vastly different from statutory standard of review under APA). R. Fallon, Jr., "Applying the Suspension Clause to Immigration Cases," 98 COLUM.L.REV. 1068 (1998).

"Mindful of the presumption that executive resolutions of constitutional issues are judicially reviewable," *LaGuerre,* 164 F.3d at 1040 (citing *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (other citations omitted)); *see Morel v. INS,* 144 F.3d 248 (3rd Cir.1998); *Mansour v. INS,* 123 F.3d 423, 426 (6th Cir.1997); *Ramallo v. Reno,* 114 F.3d at 1214; *Fernandez v. INS,* 113 F.3d 1151, 1154 n. 3 (10th Cir.1997), this Court holds that district courts lack habeas jurisdiction

for aliens deportable because of having been convicted of specified crimes. The Court thus implements congressional intent to drastically restrict judicial review of these INS decisions. This ruling, however, is expressly limited by the Court's view that, notwithstanding AEDPA § 440(a), the Fifth Circuit remains an avenue of review to the extent constitutionally required despite the absence of guidance from that Court of Appeals as to where, how or when the anticipated review may be sought by a criminal alien subject to a final removal order.[22]

As noted by the Fifth Circuit, a result that eliminates all judicial review would violate the Suspension Clause, U.S. Const., art. I, § 9, cl. 2, or the separation of powers doctrine. *See, e.g., Williams v. INS,* 114 F.3d at 84. Holding that no jurisdiction existed in the court of appeals to review a final order of deportation of the BIA, the court in *Williams* explained that " 'limited opportunity to apply for writ of habeas corpus may remain'—at a minimum 'the writ that Art. I, § 9, cl. 2 preserves against suspension.' " *Id.* (quoting *Yang v. INS,* 109 F.3d 1185, 1194–97 (7th Cir.1997), *aff'd,* 519 U.S. 26, 117 S.Ct. 350, 351, 136 L.Ed.2d 288 (1996)). *See Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *see also Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 672–73, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); *Waddell,* 1999 WL 151661, at *4.[23] Furthermore, in *Okoro v.*

does not rely on the possible existence of habeas jurisdiction, to which *Yang* referred. Rather, *LaGuerre* focuses on courts' obligations to ascertain their own jurisdiction and on the doctrine that executive resolutions of constitutional decisions are judicially reviewable. *Id.* at 1040 (citing *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988)).

**22.** *See Parra,* 172 F.3d 954, 956 (allowing habeas relief for challenges to INS authority under 8 U.S.C. § 1226); *see also Yang,* 109 F.3d at 1195; *Salazar–Haro,* 95 F.3d at 311 finding that ("[t]o the extent, therefore, that [Fifth Amendment] rights applicable to aliens may be at stake, judicial review may not be

withdrawn by statute."); *Hincapie–Nieto,* 92 F.3d at 31 (concluding that § 440(a)'s repeal of direct review is constitutional on the basis of representations by the INS that some avenue of judicial relief remains available for core constitutional concerns); *Kolster,* 101 F.3d at 791 (same). *Cf. Duldulao,* 90 F.3d at 400 n. 4 (upholding § 440(a)'s elimination of direct appeals but noting that the availability of habeas relief was not an issue); *Boston–Bollers,* 106 F.3d at 354–55 (upholding constitutionality of § 440(a) without mentioning issue of remaining habeas relief).

**23.** This view has been re-affirmed *in dicta* issued by other panels of the Fifth Circuit in *Nguyen v. INS,* 117 F.3d 206, 207 (5th Cir.

*INS*, 125 F.3d 920 (5th Cir.1997), the Fifth Circuit held that the AEDPA (and the IIRIRA) eliminated its jurisdiction to entertain a petition of review from a final order of deportation for a criminal alien deportable for having committed certain offenses. *Id.* at 923. Nonetheless, the Court of Appeals accepted jurisdiction to determine as a threshold matter whether the alien was in fact deportable for the reasons stated in the statute. *Id.* at 925. Thus, the court reviewed whether *Okoro's* underlying offenses were (1) crimes involving moral turpitude; (2) not arising from a single scheme of criminal misconduct; and (3) for which *Okoro* was sentenced to one year or more of imprisonment. *Id.* at 925–27.[24]

Therefore, the Court concludes that AEDPA § 440(a) deprives this Court of jurisdiction to entertain Petitioner Berlanga's claims in this habeas corpus proceeding.

### 3. IIRIRA § 309(c)

■ The pertinent transitional rules governing deportation orders, such as the one *sub judice*, are found in IIRIRA

§ 309(c)(1) (not codified), which provides in relevant part:

(c) TRANSITION FOR ALIENS IN PROCEEDINGS.—

(1) GENERAL RULE THAT NEW RULES DO NOT APPLY.—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of [April 1, 1997]—

(A) the amendments made by this subtitle shall not apply, and

(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

Thus, according to IIRIRA § 309(a)(1), the procedures under former INA § 106(a) apply to deportation proceedings pending on April 1, 1997.

The transitional rules also provide, however, in IIRIRA § 309(c)(4), that in cases (such as the one at bar) in which a final order of deportation was entered after October 30, 1996:

notwithstanding any provision of section 106 of the Immigration and Nationality

---

1997) ("criminal deportees retain some opportunity to apply for writs of habeas corpus"). *See also Mendez–Rosas v. INS*, 87 F.3d 672, 675 (5th Cir.1996) (" § 440(a) effectively eliminates all judicial review of certain criminal alien appeal, and, correspondingly, *our sole* source of appellate jurisdiction to hear such cases." (emphasis added)).

**24.** The Court recognizes, however, that the strength of these Fifth Circuit opinions as precedent may need further appellate consideration. *Lerma de Garcia* relied heavily on *Nguyen* and *Chow v. INS*, 113 F.3d 659, 668 (7th Cir.1997). *Nguyen* (which cited AEDPA § 440(d), but apparently intended to refer to § 440(a)) relied primarily on *Williams*, 114 F.3d at 84. *Williams*, written by a district judge sitting by designation, was a brief opinion issued only shortly after the AEDPA became effective. The AEDPA's complexities had not yet been subject to extensive challenge or substantial appellate analysis. In addition, *Lerma de Garcia* relied on *Chow*, 113 F.3d at 668, which now has been abrogated by the Seventh Circuit by *LaGuerre*, 164

F.3d at 1037–40 (holding in that connection that the courts of appeals retain certain judicial review powers—not necessarily pursuant to habeas jurisdiction—"as enough of a safety valve . . . to enable judicial correction of bizarre miscarriages of justice."). Furthermore, the *Lerma de Garcia* court characterized the jurisdictional issue before it to be whether there was an exception to the jurisdictional bar set forth in the IIRIRA § 309(c)(4)(G), for claims alleging "substantial constitutional violations." *Id.* at 217. The *Lerma de Garcia* court focused on the language of § 309(c)(4)(G) ("there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in [specified sections]"), which it characterized as "differ[ing] only trivially" from § 440(a). *Id.* at 217 n. 1 (citing *Nguyen*, 117 F.3d at 207). This Court concludes that for the purposes of Berlanga's contentions, the wording in AEDPA § 440(a) is different from that in IIRIRA § 309(c)(4)(G), and thus the *Lerma de Garcia* court did not reach the issue presented by Berlanga.

Act (as in effect as of the date of the enactment of this Act) to the contrary—

(A) [provision relating to exclusion];

(B) a court may not order the taking of additional evidence under section 2347(c) of Title 28, United States Code;

(C) the *petition for judicial review* must be filed not later than 30 days after the date of the final order of ... deportation;

(D) the *petition for review shall be filed with the court of appeals* for the judicial circuit in which the administrative proceedings before the special inquiry officer or immigration judge were completed;

(E) there shall be *no appeal* of any discretionary decision under section[s] 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act);

(F) service of the petition for review shall not stay the deportation of an alien pending the court's decision on the petition, unless the court orders otherwise; and

(G) *there shall be no appeal permitted in the case of an alien who is ... deportable by reason of having committed [certain] criminal offense[s]* ...

Although § 309(c)(4)(G) eliminates "appeals" for specified criminal aliens, the pertinent transitional rules on their face do not address applications or petitions for writs of habeas corpus. In the criminal context, there are longstanding distinctions between review through appeal and through applications for writs of habeas corpus. For instance, various matters typically are reviewable in one context but not in the other.[25] Thus, the Court concludes that Congress did not repeal § 2241 by

implication or otherwise through IIRIRA § 309(c)(4)(G). Under the *Felker* analysis discussed above, Congress did not speak sufficiently clearly for this Court to conclude that repeal of all habeas jurisdiction was intended by enacting IIRIRA § 309(c)(4)(G).

### 4. Conclusion On Jurisdiction

In this Court's view, courts of appeals, but not district courts, retain authority under either habeas jurisdiction or the power to review executive resolution of constitutional questions, despite AEDPA § 440(a) and IIRIRA § 309(c)(4)(G), to review their own jurisdiction, to ascertain from the record that the INS had jurisdiction over the alien in issue, and to review constitutional claims. *See LaGuerre,* 164 F.3d at 1040; *Richardson,* 162 F.3d at 1379; *Lerma de Garcia,* 141 F.3d at 216; *Okoro v. INS,* 125 F.3d 920, 926 (5th Cir. 1997); *Williams v. INS,* 114 F.3d 82, 84 (5th Cir.1997); *Waddell,* 1999 WL 151661 at *5; *see also Henderson,* 157 F.3d at 119 n. 9.

This conclusion is consistent with the Fifth Circuit's statements that, despite the global language of AEDPA § 440(a) and IIRIRA § 309(c)(4)(G), criminal deportees presumably retain some very limited opportunity to seek judicial relief, since elimination of all judicial review would violate the Suspension Clause or the Due Process Clause of the Constitution. *See Lerma de Garcia,* 141 F.3d at 216–17; *Nguyen v. INS,* 117 F.3d 206, 207 (5th Cir.1997) (citing *inter alia* § 440(d), but apparently intending to refer to § 440(a)); *Williams,* 114 F.3d at 84.

The Court does not need to reach the remaining issues briefed by the parties. However, in the interests of judicial economy, the Court sets forth briefly the following conclusions, in the event that the court of appeals were to determine that this

---

**25.** For example, sentencing decisions are generally reviewable on direct appeal, but not on federal habeas review. *See Fuller v. Johnson,* 114 F.3d 491, 497 (5th Cir.1997) (holding that

habeas petitioner's complaints regarding sentencing are more "properly considered under the Texas Rules of Criminal Evidence on direct appeal.")

Court had habeas jurisdiction over Berlanga's habeas petition.

### B. *Scope of Habeas Review*

Respondents argue that if this Court does have jurisdiction, Petitioner is limited to claims alleging a "grave constitutional error" or "fundamental miscarriage of justice," which do not encompass Petitioner's claims in this case. The Court concludes that those standards are too restrictive. There is no statutory or judicial authority suggested to the Court by Respondents that warrants application of these standards here. These standards generally are applied to "successive" habeas petitions seeking review of state court judgments, which are circumstances materially different from those at bar.

The Court thus concludes that Petitioner's constitutional arguments qualify for review to the extent the Court were held to have subject matter jurisdiction over Petitioner's habeas petition.[26]

### C. *Retroactivity of the AEDPA § 440(d) Amending INA § 212(c)*

██ Petitioner Berlanga argues that Respondents unconstitutionally applied AEDPA § 440(d) (which removed the Attorney General's discretion to waive deportation of criminal aliens) to his case. Petitioner notes that his INS deportation proceedings began before the AEDPA was signed into law on April 24, 1996, and that he sought what was, at the time he filed his petition, discretionary relief under former INA § 212(c). Petitioner argues that applicability of AEDPA § 440(d) to his case constitutes an impermissible retroactive application of new legislation.

██ The Court concludes that § 440(d) is applicable to Berlanga's administrative proceedings, and that this application is not improperly retroactive. The Supreme Court has held that a statute does not "operate 'retroactively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). Rather, legislation is impermissibly retroactive when it "attaches new legal consequences to events completed before its enactment." *Id.*[27]

Congress did not explicitly provide for the retroactive application of § 440(d). *See Adepegba v. Hammons,* 103 F.3d 383, 385 (5th Cir.1996) (citing *Landgraf,* 114 S.Ct. at 1505); *see also Mendez–Rosas v. INS,* 87 F.3d 672, 675 (5th Cir.1996) (holding AEDPA § 440(a) applied retroactively). Nevertheless, this Court concludes that retroactive application of § 440(d) does not offend the *Landgraf* concerns. Berlanga, when he committed the offenses that give rise to his required deportation, had no justified expectations that would be thwarted by a retroactive application of § 440(d) of the AEDPA. *See Drinkard v. Johnson,* 97 F.3d 751, 766 (5th Cir.1996)[28]

---

**26.** The scope of this review is within courts of appeals capabilities since only resolution of legal questions is necessary. In the unusual case that fact finding were deemed necessary by a court of appeals, remand of the case to the district court may be ordered. *See* 28 U.S.C. § 2241(b).

**27.** A statute is impermissibly retroactive, and thus invalid, if it does any of three things: "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 386 (quoting *Landgraf,* 114 S.Ct. at 1505). "Elementary considerations of fairness dictate that individuals should have an opportunity to

know what the law is and to conform their conduct accordingly...." *Id.* at 1497.

**28.** The result in *Drinkard* was modified by the Supreme Court's decision in *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The Fifth Circuit has held, however, that "*Drinkard* and its progeny presumably remain precedent in this circuit to the extent they interpret the provisions of the AEDPA and do not conflict with *Lindh's* conclusion that the chapter 153 (capital case) amendments do not apply to cases pending on the effective date of the Act." *Nobles v. Johnson,* 127 F.3d 409, 413 n. 4 (5th Cir.1997) (citing *Green v. Johnson,* 116 F.3d 1115, 1120 n. 2 (5th Cir.1997)).

(holding that petitioner could not show any connection between the new standards of habeas review at issue and his conduct on the night of his offense or during his state criminal proceedings); *see also Nguyen,* 117 F.3d at 207 (allowing application of § 440(d)'s amendment precluding waivers under former INA § 212(c) (8 U.S.C. § 1182(c)) to a petitioner whose administrative deportation proceedings began prior to passage of the AEDPA, but whose BIA final decision occurred after the IIRIRA was enacted); *LaGuerre,* 164 F.3d at 1041.

### D. *Equal Protection Claims Asserted by Petitioner*

■ Berlanga's petition for writ of habeas corpus asserts the claim that his deportation order is invalid as a violation of his equal protection rights because the BIA denied him the opportunity for relief under 8 U.S.C. § 1182(c). Petitioner Berlanga argues that the application of § 440(d) to deported aliens, but not to exclude aliens, is unconstitutional as a violation of equal protection or due process under the Fifth Amendment.[29] In the event the issue were properly presented to this Court, the Court would reject this claim.

First, Congress has wide authority to deal with immigration issues. *See Landon v. Plasencia,* 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature."); *see also Rodriguez v. INS,* 9 F.3d 408, 413 (5th Cir.1993) (holding that the constitutional protections afforded resident aliens is "limited by Congress's broad powers to control immigration."). Thus, judicial inquiry into the immigration process is limited to a determination as to whether the processes in question "meet the essential standard of fairness under the Due Process Clause." *Landon,* 459 U.S. at 34, 103 S.Ct. 321.

Second, under the applicable equal protection analysis, Petitioner cannot show that he is "similarly situated"[30] to aliens subject to exclusion, since aliens seeking admission to the United States have different rights than those illegally presiding within the United States. *See Landon,* 459 U.S. at 29, 103 S.Ct. 321; *see also State of Texas v. Walker,* 142 F.3d 813, 819 (5th Cir.1998). Petitioner, as a deportable alien, therefore is not similarly situated to aliens subject to the INS' exclusionary procedures. *LaGuerre,* 164 F.3d at 1041.

Third, Petitioner's reliance on *Francis v. INS,* 532 F.2d 268 (2nd Cir.1976), is misplaced. *Francis* involved the disparate treatment of deportable aliens who had and who had not temporarily left the country. Therefore, the two groups of aliens were within the same classification. The *Francis* court noted that:

> We do not dispute the power of the Congress to create different standards of admission and deportation for different groups of aliens. However, once those choices are made, individuals within a particular group may not be subjected to disparate treatment on criteria wholly unrelated to any legitimate government interest.

*Id.* at 273.

In this case, Petitioner is complaining about disparate treatment between two separate classes of aliens under 8 U.S.C. § 1182(c), aliens in deportation proceedings and those in exclusion proceedings.

---

**29.** Petitioner brings an equal protection claim. The Supreme Court has held that "If a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment." *Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

**30.** *See Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (an equal protection claim requires proof that similarly situated individuals were treated in a manner different from plaintiff).

*See Waddell,* 1999 WL 151661, at *10 –*11 (summarizing the history of the statute and distinctions drawn by Congress and the INS in various contexts where the INS validly has enforced broader grounds for aliens in exclusion proceedings than aliens in deportation proceedings); *see also Olvera,* 20 F.Supp.2d at 1066.

Finally, even if excludable aliens and deportable aliens were deemed similarly situated, the Court would apply a rational basis review.[31] Under rational basis analysis, a classification "is accorded a strong presumption of validity." *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). "[A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*

Effective April 24, 1996, the AEDPA, § 440(d) eliminated discretionary relief for aliens "deportable" for certain enumerated offenses, including the drug offense for which Petitioner Berlanga was convicted.[32] Deportable aliens reside in the United States, but are subject to deportation. 8 U.S.C. § 1251(a). Excludable aliens may be denied entry into the United States. 8 U.S.C. § 1182(a); *see Waddell,* 1999 WL 151661 at *8. Berlanga complains that the denial of eligibility for discretionary relief to deportable aliens under § 212(c) as amended by the AEDPA, while granting such review to excludable aliens, is irrational and thus a denial of equal protection. This Court disagrees. As Judge Lake stated in *Olvera:*

> It was certainly not irrational for Congress to provide the discretionary relief in § 1182(c) only to the narrow class of [non-criminal] aliens who, after residing legally in the United States for at least seven years, returned from a trip abroad only to wind up in exclusion proceedings. If any of the numerous grounds for exclusion appeared, even if the ground seemed minor when compared with the alien's merits, immigration officials were required to institute exclusion proceedings. In contrast, a comparable resident alien who never left the United States was subject only to the narrower grounds for deportation, and had the procedural advantages of deportation proceedings. Moreover, deportation proceedings were instituted only after a deliberate decision of the INS. Congress may rationally have decided that deportable aliens did not deserve any extra opportunity for administrative discretion.

20 F.Supp.2d at 1070. The Court similarly holds that there is a rational basis for denying § 1182(c) relief only to the designated class of deportable aliens. *Id.* Therefore, Berlanga's petition would be denied if the Court reached the merits of his equal protection claim.

---

**31.** In fact, Petitioner argues this in his Petition. It states that this distinction is "not rationally related ... to the purpose of INA section 212(c) or any other legitimate governmental interest." Petition for Writ of Habeas Corpus, at 11.

**32.** Section 440(d) amended the last sentence of § 212(c) to read: "This subsection [permitting the Attorney General to exercise discretion to readmit aliens who were previously lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily ... and who sought to return to a lawful unrelinquished domicile of seven consecutive years] shall not apply to an alien who is deportable by reason of having committed [specified criminal offenses]." The BIA interpreted this provision to apply to deportable aliens, but not to excludable aliens. So aliens in exclusion proceedings remained eligible for an INA § 212(c) waiver while those in deportation proceedings did not.

> The IIRIRA (§ 304(a), 110 Stat. 3009, 3009–597) repealed § 212(c), as previously amended by the AEDPA, and consolidated deportation and exclusion proceedings into a single category, renaming both "removal" proceedings. 110 Stat. at 3009–587. As amended by the IIRIRA, INA § 212(c), 8 U.S.C. § 1182(c), bars discretionary relief to criminal legal permanent residents in both exclusion and removal proceedings. This amendment eliminates any equal protection theory, since there are no longer two categories of aliens under the statute.

## VI. *CONCLUSION*

For the reasons discussed above, the Court holds that it is without jurisdiction in this case and Respondents' Motion to Dismiss [Doc.# 7] should be granted. Alternatively, the Court holds that Petitioner's equal protection claim lacks legal merit. It is therefore

**ORDERED** that Respondents' Motion to Dismiss [Doc. # 7] is **GRANTED**.